In re SVERICA ACQUISITION CORPO-RATION, INC., a/k/a Sverica Acquisition Subsidiary, Inc., Debtor.

Michael KALINER, Trustee, Plaintiff,

v.

LOAD RITE TRAILERS, INC., Donald D. Paul, J. Bruce Chambers, Robert R. Johnston, Johnston Acquisition Corporation, Inc. and Continental Bank, N.A., f/k/a Continental Illinois National Bank and Trust Company of Chicago, Defendants.

Bankruptcy No. 92–24625 DWS.
Adv. No. 94–2110.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 23, 1995.

J. Gregg Miller, Philadelphia, PA, for Load Rite Trailers, Inc.

Anthony L. Lamm, Lafayette Hill, PA, Michael J. Sullivan, Michael I. Conlon, Detroit, MI, for Robert R. Johnston and Johnston Acquisition Corp., Inc.

Warren T. Pratt, Philadelphia, PA, for Bank of America Illinois.

Robert P. Simons, Chapter 7 Trustee, Pittsburgh, PA.

Michael Kaliner, Chapter 7 Trustee, Fairless Hills, PA.

Joseph Minni, U.S. Trustee, Philadelphia, PA.

## *OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Presently before the Court are two Motions to Dismiss the Second Amended Complaint in the above captioned adversary proceeding. The first Motion to Dismiss ("Motion I") was filed by Defendants Load Rite Trailers, Inc. ("PA Load Rite"), Donald A. Paul ("Paul"), and J. Bruce Chambers ("Chambers") (collectively the "Load Rite Defendants"). The second Motion to Dismiss ("Motion II") was filed by Defendant Bank of America, Illinois, formerly known as and named as a party herein as Continental Bank, N.A. ("Bank"). Both the Load Rite Defendants and the Bank move to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").[1] Bank

---

1. Bank joined the Load Rite Motion to Dismiss, specifically incorporating the allegations and relief requested therein. *See* Motion II, at ¶ 2.

Defendant Robert J. Johnston ("Johnston") and Johnston Acquisition Corp. ("JAC") (collectively the "Johnston Defendants") answered the

also moves to dismiss Counts I–V pursuant to Fed.R.Civ.P. 9(b).

## BACKGROUND

On December 11, 1992, six unsecured creditors of Sverica Acquisition Corporation, Inc. a/k/a Sverica Acquisition Subsidiary, Inc. ("Debtor") filed an involuntary petition under Chapter 7 of the United States Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") against the Debtor in the Bankruptcy Court for the Eastern District of Pennsylvania ("Court"). On February 11, 1993, the Court entered an Order for Relief against the Debtor.

This adversary proceeding was initially commenced by Michael Kaliner, Chapter 7 Trustee ("Trustee"), by the filing of a Complaint on February 10, 1994 ("Original Complaint") against the Load Rite and Johnston Defendants. In response, both the Load Rite and the Johnston Defendants filed Motions to Dismiss. On July 15, 1994, the Court issued a Memorandum Opinion ("Opinion")[2] and an Order ("Order of 7/15/94") ruling on the Motions in which it, *inter alia*, granted in part and denied in part the relief requested by Defendants,[3] and granted Trustee 30 days within which to amend the Original Complaint to join Bank and to plead the existence of an unsecured creditor of the Debtor who was injured by the alleged misconduct of Defendants.

On August 22, 1994, the Trustee filed the Second Amended Complaint ("Amended Complaint").[4] The Amended Complaint contains eight separate counts, the first five of which allege the same causes of action as in the Original Complaint with the exception that Bank has been added as a defendant and the Trustee has alleged the existence of a number of unsecured creditors, including specifically the Westbar Corporation, who had a right to avoid the transfers. *Id.* ¶¶ 52, 59, 63, 72.2.[5] New Count VI (Disposition of Assets in Commercially Unreasonable Manner) is directed solely at the Bank. The allegations of Counts I through VI arise out of certain transfers or sales of Debtor's assets which occurred on or about November 3, 1992 pursuant to which the Bank, allegedly a secured creditor, and Johnston, another secured creditor, foreclosed on the Debtor's

---

Second Amended Complaint. While not filing a Motion to Dismiss, they did, however, raise in their Answer as affirmative defenses and then in a Response Brief filed in Support of Motions I and II ("Response Brief") in which they sought to support and join the Motions as may be applicable to them, certain of the allegations and requests for relief contained in each Motion. The Trustee did not object to this request for relief nor to the presentation of oral argument in support of the Response Brief offered by the Johnston Defendants at the hearing on the Motions.

Given the apparent lack of prejudice and because the interests of preserving judicial resources will be advanced, the Court will consider the above arguments as they apply to the Johnston Defendants.

2. As noted previously by the Court, the relationship between the Debtor and the Defendants is complex. This relationship, however, was amply described in the Court's prior decision, and because such an understanding is a predicate to comprehending and resolving the contentions raised by these new Motions to Dismiss, the Court incorporates here that part of the Opinion captioned "Background". Opinion at 2–6.

3. Count I of the Original Complaint, asserting a claim under Code § 548(a)(1) against PA Load Rite and JAC, and Count V, asserting a claim under the Uniform Commercial Code relating to

Bulk transfers against Paul and Chambers, were dismissed under Fed.R.Civ.P. 12(b)(6); Count VI asserting a successor liability claim against the Load Rite and Johnston Defendants was dismissed. Additionally, the Johnston Defendants' request for summary judgment on Trustee's claim of constructive fraud and equitable subordination was denied. Order of 7/15/94.

4. On August 18, 1994, the Trustee filed an Amended Complaint which was quickly followed by the filing of the Second Amended Complaint. Motions I and II address the Second Amended Complaint.

5. The first five counts of the Amended Complaint are briefly stated as follows: Count I—Avoidance of Fraudulent Transfers pursuant to Code § 548; Count II—Avoidance of Fraudulent Conveyances under the Uniform Fraudulent Conveyance Acts of Pennsylvania and Michigan; Count III—Recovery of Value of Avoided Transfers for the Benefit of the Estate pursuant to Code § 550, and Transfer Liens to the Estate pursuant to Code § 551; Count IV—Equitable Subordination pursuant to Code § 510(c)(1) and (2); Count V—Violation of Article 6 of the Uniform Commercial Code ("U.C.C.") Governing Bulk Transfers. Consistent with the Order of 7/15/94, PA Load Rite and JAC, and Paul and Chambers are no longer defendants in Count I and Count V, respectively.

assets and contemporaneously sold them to the Defendants who were or had been, officers, directors and/or shareholders of the Debtor.

Count VII (Fraudulent Transfers) and Count VIII (Preferential Transfers) are also new. The allegations in new Count VII are grounded in a different transaction than that forming the backdrop for the actions complained of in the Original Complaint. Additionally at issue by reason of the Amended Complaint is the acquisition by Debtor in or about September 1990 of Load Rite Trailers, Inc., Pennsbury Manufacturing, Inc. and Eagle Trailers, Inc. from Chambers and Paul and Johnston, respectively, financed by the Bank and pursuant to which both Bank and Johnston obtained security interests in the assets purchased by the Debtor (the "1990 Transaction"). Amended Complaint ¶ 19.

### DISCUSSION

#### I.

 *Applicable Law.* In both Motions I and II the Defendants move for dismissal under Fed.R.Civ.P. 12(b)(6), applicable here pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") for failing to state claims for which relief can be granted. The Third Circuit Court of Appeals has stated that in considering a Fed. R.Civ.P. 12(b)(6) motion to dismiss, a court must accept all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, as true and view them in the light most favorable to the non-moving party. *See Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3rd Cir.1989) (citations omitted); *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3rd Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). A complaint must not be dismissed for failing to state a claim unless it appears beyond reasonable doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See City of Philadelphia v. Lead Industries Ass'n, Inc.,* 994 F.2d 112 (3rd Cir.1993) (citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). If a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is granted, then ordinarily the plaintiff should be provided an opportunity to amend the complaint if it appears that the deficiencies can be corrected by amendment. *See* 2A J. Moore, *Moore's Federal Practice* ¶ 12.07[2.–5], p. 12–99 (2d ed. 1994); *see also* Fed.R.Civ.P. 15(a).

In Motion II Bank also moves under Fed. R.Civ.P. 9(b), applicable here pursuant to Fed.R.Bankr.P. 7009, for dismissal of Counts I, II, III and IV for failing to plead with particularity the acts of fraud upon which these Counts are based. Fed.R.Civ.P. 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge or other condition of mind of a person may be averred generally.

The Third Circuit Court of Appeal's decision in *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) sets forth the standard by which the pleading of a fraud claim is to be evaluated under Fed. R.Civ.P. 9(b). There the Court of Appeals recognized that while the purpose of the Rule "is to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior", *id.* at 791, it made clear, however, that the particularity requirement of Rule 9(b) is not to be read so narrowly as to defeat " 'the general simplicity and flexibility contemplated by the [modern] rules.' " *Id.* (quoting *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3rd Cir. 1983)). The court held that while allegations of date, place or time fulfill the notice requirement of Fed.R.Civ.P. 9(b), nothing in the Rule requires such specificity and plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. *Id.* In *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 645 (3rd Cir.1989), the Third Circuit Court of Appeals repeated this principle by stating that the factual detail that is required to be alleged in a fraud count under Fed.R.Civ.P. 9 is tempered by the overall theme of simplicity and conciseness permeating the modern federal pleading

rules. *See also United States Dept. of HUD ex rel. Givler v. Smith,* 775 F.Supp. 172, 181 (E.D.Pa.1991) (noting that a complaint must stand so long as there is some precision and some measure of substantiation in the allegations, even if the complaint lacks date, place and time allegations); *Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 498 (N.D.Ill. 1988) (Fed.R.Civ.P. 9(b) must be read in harmony with Fed.R.Civ.P. 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief).

Flexibility in the application of the particularity requirement of Fed.R.Civ.P. 9 has been recognized as being particularly appropriate in the context of fraud claims brought by a statutory trustee in bankruptcy. Given the "inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party," courts have held the particularity requirement of Fed.R.Civ.P. 9(b) may be relaxed. *Schwartz v. Kursman; Schwartz v. Jetronic Industries, Inc. (In re Harry Levin, Inc. t/a Levin's Furniture),* 175 B.R. 560, 567–68 (Bankr.E.D.Pa.1994) (quoting L. King, 9 *Collier on Bankruptcy* ¶ 7009.05, at 7009–5 (15th ed. 1994)). *See In re American Spring Bed Mfg. Co.,* 153 B.R. 365, 374 (Bankr.D.Mass.1993); *Pate v. Hunt (In re Hunt),* 136 B.R. 437, 452 (Bankr. N.D.Tex.1991).

Having stated the general principles of law applicable to our decision, we now turn to the Motions themselves.

## II. MOTION I

### A. Counts I, II, III—Avoidance and Recovery of Fraudulent Transfers.

■ The Defendants assert that Counts I, II and III should be dismissed under Fed.R.Civ.P. 12(b)(6) for failing to state a claim for which relief can be granted because Trustee failed to allege the existence of any injury to a creditor of the Debtor that could be redressed under either Code § 548 or the Uniform Fraudulent Conveyance Act ("UFCA") as enacted in Pennsylvania[6] and Michigan. Specifically, Defendants argue

that Trustee cannot allege that unsecured creditors were harmed by the sales since Debtor had no equity in the assets at the time of the sales. The Defendants also contend that Trustee's allegation that Debtor's creditors were injured by the foreclosures and sales is a conclusory allegation which is not entitled to the presumption of truthfulness applicable under Fed.R.Civ.P. 12(b)(6).

The Court notes that relief was already denied to Defendants based on the lack of equity argument which they previously raised in support of the Motions to Dismiss the Original Complaint. *See* Opinion at 17–18. At the hearing the Court observed that Defendants while nominally presenting motions for dismissal of the Amended Complaint, appeared to be arguing for reconsideration of the Order denying their request to dismiss the very same Counts of the Original Complaint. The only new element of Counts I, II and III is the additional of the Bank as a party defendant. That fact does not change the conclusion reached by the Court in the Opinion. Indeed we are somewhat at a loss as to why Defendants would burden the Court in this Motion with arguments that have been already rejected and are therefore foreclosed. Accordingly, Motion I will be denied in so far as it seeks to dismiss Counts I, II and III.

### B. Count IV—Equitable Subordination.

■ Consistent with the Order of 7/15/94, the Trustee amended the Original Complaint to join the Bank in Count IV. While this is the only new element of Count IV, Defendants have renewed their previous argument, rejected in the Opinion, that the Trustee's equitable subordination claim is not independently grounded in supporting facts but rather relies solely on the misconduct alleged in support of the claims asserted in Counts I, II, and V. Thus, the Defendants contend that the Trustee has failed to allege facts which would support a finding that the Load Rite Defendants even hold a claim or interest in the Debtor which could be equitably sub-

---

6. In Pennsylvania the UFCA was repealed and re-enacted by the Act of December 3, 1993, P.L. 479, No. 70, 81, codified at 12 Pa.C.S.A. § 5101–5110, and renamed the Uniform Fraudulent Transfer Act (UFTA). UFTA is applicable to transfers made after its effective date of February 1, 1994. Thus, the UFCA is still applicable to the matter *sub judice.*

ordinated pursuant to Code § 510(c), save for a claim or interest that might only arise if the Trustee were successful in his bid to avoid the transfers under the other Counts. Defendants argue that equitable subordination of such a claim or interest is not permissible under Code § 510(c) as either a double recovery or a penalty.

In deciding the Motions to Dismiss the Original Complaint, we held that:

> [T]he elements of equitable subordination sought in Count IV of the Complaint are different from the elements of the other Counts of the complaint. At this juncture in the case, we are willing to accept the possibility, albeit remote, that the elements of Count IV could be satisfied even if the elements of the other Counts are not. Since we are satisfied that the Trustee is not seeking a double recovery, we will for now allow the Trustee to press his equitable claim given our inability to conclude that the Trustee's legal remedies are adequate.

*Id.* at 21 (citing *In re Fierman,* 14 B.R. 753, 754 (Bankr.E.D.Pa.1981)).

Counsel to the Load Rite Defendants acknowledged in argument that the averments of Count IV are the same in the Amended Complaint as in the Original Complaint. Accordingly, having already ruled against Defendants on their request to dismiss this Count of the Original Complaint, Opinion at 21, the Court will not revisit the issue here. Accordingly, the Motion to Dismiss Count IV is denied.

### C. Count V—Appointment of a Receiver.

The Load Rite Defendants move for dismissal of Count V to the extent the Trustee seeks the appointment of a receiver, contending that the appointment of a receiver by this Court is expressly prohibited by § 105(b). In response, the Trustee acknowledges that this Court may not appoint a receiver in a case under title 11 and seeks to withdraw the requested relief. The Trustee's request is granted and Count V stands with this amendment to the pleading.

### D. Count VII—Avoidance of 1990 Transaction as a Fraudulent Conveyance.

In Count VII, the Trustee seeks to avoid all transfers made in connection with the 1990 Transaction, asserting that the transfers made to each of the Defendants constitute fraudulent conveyances of property of the Debtor under the UFCA as adopted in Pennsylvania and Michigan. The Trustee does not specify which section(s) of the UFCA he is pursuing under Count VII.[7]

Defendants Paul and Chambers provide three arguments in support of their contention that Count VII should be dismissed: a) the Trustee lacks standing to bring the avoidance action; b) the statute of limitations has expired; and c) the Trustee fails to allege that either Paul or Chambers was a transferor or transferee of property of the Debtor. Johnston, in his Brief in Support, joins Paul and Chambers in their second argument; contends that the Trustee failed to allege that any liens or moneys received by Johnston in the 1990 Transaction were fraudulent conveyances; and adds that the Order of 7/15/94, did not permit the Trustee to amend to add any new theories of liability and that the Trustee has not complied with Fed.R.Civ.P. 15 in attempting to make such an amendment.

■ *Standing.* The Court will address the standing issue first since it is jurisdictional in nature. Accordingly, success by Defendants on this issue would render unnecessary any consideration of their additional arguments. In essence, Defendants contend that the Trustee lacks standing to raise the UFCA claim because Trustee has not, nor can he, allege the existence of an unsecured creditor whose rights he could assert under the UFCA.

---

7. Additionally, the Trustee does not state under what bankruptcy statutory authority he asserts the UFCA claims. It is presumed, however, that he is proceeding under Code § 544(b) since that section of the Code creates in the trustee the power to avoid any transfer of an interest of the debtor in property that is voidable under state or federal non-bankruptcy law by a creditor holding an unsecured claim. *See, e.g., In re Topcor, Inc.,* 132 B.R. 119, 122 (Bankr.N.D.Tex.1991); 4 *Collier on Bankruptcy* ¶ 544.03 (15th ed. 1994).

In support of Count VII the Trustee baldly asserts that "[a]t the time of the 1990 leveraged buy-out, an unsecured creditor of the Debtor existed." Amended Complaint at ¶ 97. Procedurally, this allegation is insufficient to satisfy even the minimal pleading requirements of Fed.R.Civ.P. 8 since it fails to adequately place Defendants on notice of whose rights the Trustee is claiming under. Such notice is imperative here because the Trustee's rights under Code § 544(b) are derivative of whatever rights the alleged creditor had under state law. It is crucial therefore that Defendants have proper notice of the identity of the alleged creditor in order that they might confirm or deny the validity of that entity's claim. Moreover, the challenged allegation is also substantively deficient because it fails to allege a necessary element of the Trustee's cause of action. Specifically, the Trustee has failed to allege that the unnamed creditor alleged in ¶ 97 of the Amended Complaint was harmed as a result of the 1990 Transaction and had a right to avoid the transfers under the UFCA. For both of these reasons, the allegations contained in Count VII fail to state a claim under the UFCA.

Defendants also contend that the Debtor did not exist prior to the 1990 Transaction and only came into being for the purpose of acquiring Pennsbury Manufacturing, Inc., Load Rite Trailers, Inc., and Eagle Trailers, Inc. Defendants assert therefore that Debtor had no creditors of its own at the time the transactions took place who could have asserted a claim under the UFCA. If this is true, then it would appear that Trustee lacks standing to assert claims under 39 Pa.S.A. § 354 and Mich.Comp.Law. § 566.14 since these provisions of the UFCA are only applicable to redress injuries to creditors that were in existence at the time of the transfers. Cf. Ferrari v. Barclays Business Credit (In re Morse Tool, Inc.), 148 B.R. 97, 131–32 (Bankr.D.Mass.1992) (holding that trustee lacked standing to assert a claim under an analogous provision of the Massachusetts UFCA). The foregoing defects in the Amended Complaint, if not curable by amendment, support dismissal of Count VII to the extent relief is sought under the foregoing provisions of the UFCA as adopted in Pennsylvania and Michigan.

Additionally, Trustee has not alleged the existence of any "future creditors" of the Debtor whose rights the Trustee could have asserted against the Defendants under applicable provisions of the UFCA. See, e.g., 39 Pa.S.A. §§ 355 through 357; Mich.Comp. Law. §§ 566.15 through 566.17 (incorporating causes of action for harm to both present and future creditors).[8] While Trustee did allege that unsecured creditor Westbar had a right to avoid the transfers occurring under the 1992 transactions, Amended Complaint at ¶¶ 52, 59, 63 and 72, he did not allege that such creditor was also harmed by, and had a right to avoid, the transfers made in connection with the 1990 Transaction. Accordingly, Trustee has failed to allege facts that are an essential element of his claim under the UFCA and Count VII, if not curable, must be dismissed on this basis as well.

Ordinarily, when a claim is dismissed for failing to state a claim under Fed.R.Civ.P. 12(b)(6), the plaintiff should be provided an opportunity to amend the complaint if the defect can be readily cured by amendment. See generally 2A J. Moore, Moore's Federal Practice ¶ 12.07 [2.–5], p. 12–99 (2d ed. 1994).[9] However, if any applicable statute of

---

**8.** A significant purpose of UFCA § 5, upon which both Pa.C.S.A. § 355 and Mich.Comp.Law. § 566.15 are based, is to prevent undercapitalized companies from entering the market place where they will cause harm by attracting unwary creditors to inevitable loss. See generally Morse Tool, 148 B.R. at 132. Similarly, UFCA § 6 addresses harm to both present and future creditors stemming from "conveyances by a person about to incur debts" which will be beyond such person's ability to pay as they mature, and UFCA § 7 addresses harm caused by conveyances made with actual intent, as opposed to constructive intent, to hinder, delay or defraud such creditors.

**9.** We are allowing the Trustee to further amend the Amended Complaint because he has pleaded the existence of an unsecured creditor at the time of the 1990 Transaction (Amended Complaint ¶ 97) and a future unsecured creditor (Westbar) (Amended Complaint ¶ 52). Accordingly, we cannot conclude that there did not exist the requisite creditor necessary to provide the Trustee with standing to challenge the 1990 Transaction. We note, however, that this is the second amendment that the Trustee has been allowed to his Original Complaint. We, therefore, expect that the guidance from this Opinion (which we

limitations has already expired in this case then amendment of the Amended Complaint might prove to be an exercise in futility. Accordingly, the Court will examine the statute of limitations issue.

▬▬▬ *Statute of Limitations.* In the matter *sub judice*, it is Code § 544(b) which provides Trustee with the power to avoid certain transfers of an interest of the Debtor that would be avoidable by an unsecured creditor under the UFCA. Under Code § 544(b) the trustee stands in the shoes of the unsecured creditors of the debtor, *see Moody v. Security Pacific Business Credit, Inc.*, 127 B.R. 958, 989 n. 6 (W.D.Pa.1991), *aff'd*, 971 F.2d 1056 (3d Cir.1992), and acquires no greater rights of avoidance by operation of Code § 544(b) than such creditors would themselves have under state law. As long as the applicable state law statute of limitations period has not expired prior to the filing of the bankruptcy, the trustee may bring an avoidance action under Code § 544(b) within two years of his appointment. *See* 11 U.S.C. § 546(a); *Topcor*, 132 B.R. at 124; *accord Hirsch v. Marinelli (In re Colonial Realty)*, 168 B.R. 506, 508 (Bankr. D.Conn.1994).[10] *See also 4 Collier on Bank-*

*ruptcy* ¶ 544.03[2], at 544–21 to 22. Thus, in order for Trustee to be able pursue the UFCA claims, the state statute of limitations must not have run prior to the filing of the involuntary bankruptcy petition in this case.

Defendants argue that the controlling statute of limitations is the two year period applicable to fraud claims under 42 Pa.C.S.A. § 5524(7).[11] The thrust of the Trustee's analysis of the limitations issue is that because the relief he seeks is equitable in nature, to wit, avoidance of the transfers of the Debtor's property as part of the 1990 Transaction, the claim he asserts is not governed by the limitations provision of 42 Pa.C.S.A. § 5524(7). The Trustee contends because there is no statute of limitations specifically applicable to his claim under the UFCA, the six year statute of limitations period provided by the "catch all" provisions of 42 Pa.C.S.A. § 5527 should apply.

▬▬▬ The Trustee is correct that the UFCA grants an equitable remedy to defrauded creditors by giving them the right to have a fraudulent conveyance set aside to the extent necessary to satisfy their claims. *See, e.g., Malis v. Zinman*, 436 Pa. 592, 595–96,

---

thought would not have been necessary based on the rulings contained in the first Opinion) will result in a Third (and last) Amended Complaint containing specific factual averments designed to put Defendants on notice of the acts complained of and which will address *only* the defects permitted to be cured herein. It is only the great preference of the law for deciding disputes on their merits that has caused us to reluctantly send this adversary proceeding procedurally back to square one to allow the Trustee this final attempt to properly plead his case, if he can.

**10.** In relevant part, Code § 546(a) states that: "An action or proceeding under section 544 ... of this title may not be commenced after the earlier of—(1) two years after the appointment of a trustee under section 702 ... of this title; or (2) the time the case is closed or dismissed." The Defendants do not dispute the timeliness of the Trustee's commencement of suit under § 546(a). The statute of limitations provided in Code § 546(a)(1) begins to run from the first appointment of a trustee under § 702. The interim trustee becomes the permanent trustee if no trustee is elected. Code § 702(d). The original interim trustee in this case, Edward Mazze, was appointed on February 19, 1993 replaced by Michael Kaliner on June 15, 1993. No trustee was thereafter elected and Kaliner became the

permanent trustee pursuant to § 702(d). The period in which the Trustee had to file his complaint under § 544 had not expired at the time he filed his Second Amended Complaint on August 22, 1994. Thus, while he failed to seek leave to add new Counts VI, VII and VIII, the Court perceives no unfair prejudice to Defendants in allowing such claim to stand as a part of the Amended Complaint. Given the Court's discretion to liberally allow amendment to pleadings absent some prejudice to the opposing party, we refuse to dismiss Counts VI, VII and VIII in response to Johnston's procedural objection that the Trustee's amendment went beyond the Court's Order of 7/15/94 and Opinion.

**11.** None of the parties in this case have argued what statute of limitations should apply to claims under the Michigan UFCA. However, the Court's independent analysis reveals that fraud claims in Michigan are governed by a six year statute of limitations. *See* Mich.Comp.Law. § 600.5813; *Executone Business Systems Corp. v. IPC Communications, Inc.*, 177 Mich.App. 660, 442 N.W.2d 755 (Mich.App.1989); *Fagerberg v. LeBlanc*, 164 Mich.App. 349, 416 N.W.2d 438 (Mich.App.1987).

261 A.2d 875, 877 (1970).[12] Prior to enactment of the UFCA in Pennsylvania, the exclusive means of remedying transfers of property made in fraud of creditors was by a cumbersome and expensive process at common law requiring the creditor to obtain a judgment on the debt, levy execution on the conveyed property, purchase it and then bring an action in ejectment against the alleged fraudulent transferee wherein the fraudulent nature of the transfer would finally be adjudicated. Under the UFCA, however, creditors in Pennsylvania now have a choice between the equitable remedy of setting a fraudulent conveyance aside to the extent necessary to satisfy their claims, or the legal remedy of disregarding the conveyance altogether and attaching or levying execution upon the conveyed property. § 39 Pa.S.A. § 359(1). *See South Central Building & Loan Ass'n v. Milani*, 300 Pa. 250, 254, 150 A. 586, 587–88 (1930); *Sauber v. Nouskajian*, 286 Pa. 449, 455, 133 A. 642, 644 (1926). The simplification of the process by providing this alternative remedy does not change the nature of a claim brought under the UFCA in Pennsylvania which is based on fraud.

The UFCA does not contain a statute of limitations and therefore we must look elsewhere to discover when the cause of action under UFCA is extinguished.[13] The timeliness of an equitable action can be determined by the doctrine of laches (which looks for guidance to the most applicable statute of limitation) or by direct reference to the applicable statute of limitations under Pennsylvania law. *See* 42 Pa.C.S.A. § 5501(c); *United Nat. Insur. Co. v. J.H. France Refractories Co.*, 417 Pa.Super. 614, 622, 612 A.2d 1371, 1375 (1992), *allocatur granted*, 533 Pa. 646, 622 A.2d 1377 (1993).

In 1976 the Pennsylvania legislature enacted an all-inclusive limitations of action statute. *See* 42 Pa.C.S.A. §§ 5522–5527. The new statute, however, contained no express limitation on actions for fraud or deceit.[14] Thus, in 1982, the Judicial Code of Pennsylvania was amended to provide specifically for

**12.** Where, however, the fraudulent conveyance suit seeks relief that could be provided by a court of law, the action does not sound in equity. *Granfinanciera v. Nordberg*, 492 U.S. 33, 49, 109 S.Ct. 2782, 2794, 106 L.Ed.2d 26 (1989). In *Granfinanciera*, the Supreme Court did not find persuasive the respondent's claim that a suit to avoid allegedly fraudulent transfers and seek restitution of funds that were transferred were "classical equitable remedies." Rather the Court found that because dollars were fungible and respondent did not ask for an accounting or any other specifically equitable form of relief, a complete remedy was available at law and a suit in equity was foreclosed. *Id.* at 49 n. 7, 109 S.Ct. at 2794 n. 7.

**13.** On the other hand, the UFTA, which enacted the Uniform Fraudulent Transfer Act promulgated by the National Conference of Commissioners on Uniform State Laws in 1984, contains a statute of limitations. It provides that the limitations period is (a) in the case of actual fraud, four years after the transfer was made or, if later than one year after the transfer was or could have reasonably been discovered by the claimant, and (b) in the case of constructive fraud, four years after the transfer was made. UFTA § 5109. The enactment of UFTA has been recognized as relieving the uncertainty in the present Pennsylvania law and making Pennsylvania law on this issue consistent with the other 30 states that had adopted the Uniform Law as of its enactment in Pennsylvania. Fraudulent Conveyance Task Force of the Section on Corporation, Banking and Business Law of the Pennsylvania Bar Association, *Report on the Pennsylvania Uniform Fraudulent Transfer Act With Committee Comments* at 1–2 (March 31, 1993). While the Trustee notes the existence of the UFTA with its four year statute, he does not assert it should be given retroactive effect here.

**14.** Certain courts applying Pennsylvania law had held that the general tort statute of limitation for "an action for taking, detaining or injuring personal property, including actions for specific recovery thereof" contained in § 5524(3) applied to actions sounding in fraud, including fraudulent conveyances. *See, e.g., In re Penn Packing*, 42 B.R. 502 (Bankr.E.D.Pa.1984). *See also Citizens Bank of Elizabethton, Tenn. v. Ken–Penn Amusement, Inc.*, 798 F.Supp. 268 (W.D.Pa.1992) (parties agree and court applies two year statute of limitations to action to set aside sheriff's sale under the UFCA). The Third Circuit Court of Appeals stated otherwise in 1976 recognizing, *inter alia*, that absent a mention of fraud in § 5524(3) it saw little indication of an intent on the part of the legislature to drastically reduce the limitations period from six to two years. *A.J. Cunningham Packing v. Congress Financial Corp.*, 792 F.2d 330, 334–36 (3rd Cir.1986). In finding that the 1982 amendment adding subsection (7) changed rather than clarified the law, it noted the new language "any other action" as evidence that the legislature knew that the 1976 Code "did not sweep as broadly as they might have wished." *Id.* at 336.

fraud claims in order to clear up an ambiguity which had existed over whether the six year or the two year limitations period applied to such actions. *See, e.g., A.J. Cunningham Packing v. Congress Financial Corp.,* 792 F.2d 330, 334 (3rd Cir.1986). That amendment set forth in 42 Pa.C.S.A. § 5524(7) states:

The following actions and proceedings must be commenced within two years:

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud....

■ By its own terms, 42 Pa.C.S.A. § 5524(7) applies to "any other action or proceeding sounding in trespass, including deceit or *fraud....*" *Id.* (emphasis added). The term "action" is defined as "any action at law or in *equity.*" 42 Pa.C.S.A. § 102 (emphasis added). That the remedy sought is equitable is simply not a determinative factor for statute of limitations purposes as evidenced by the plain language of § 5524(7).[15] The Trustee has strained to draw a distinction between legal and equitable causes of action where none exists for purposes of determining the applicable statute of limitations under Pennsylvania law. The Superior Court of Pennsylvania, in considering the application of the statute of limitations to an equitable action for rescission of a fraudulently obtained life insurance policy, held that the two year limitations period of § 5524(7) applies to *any* claim for fraud brought after February 18, 1983, the effective date of the statute, *J.H. France Refractories,* 417 Pa.Super. at 626–27, 612 A.2d at 1377. *See also Amodeo v. Ryan Homes, Inc.,* 407 Pa.Super. 448, 463, 595 A.2d 1232, 1238 (1991).

The Third Circuit Court of Appeals has held § 5524(7) generally applicable to fraud claims accruing after the effective date of the amended statute. *See, e.g., Menichini v. Grant,* 995 F.2d 1224 (3rd Cir.1993); *Gruber v. Price Waterhouse,* 911 F.2d 960, 966 n. 9 (3rd Cir.1990). However, these cases dealt with causes of action grounded in common law fraud. Neither the appellate court nor the Pennsylvania courts have considered whether a fraudulent conveyance action is embraced by the language of § 5524(7). The only post-amendment decisional law to address this question emanates from my colleague Chief Judge David A. Scholl who, relying on the Third Circuit Court of Appeal cases, found that it was. *Comm. of Unsecured Creditors v. Micron Products, Inc.,* 1991 WL 204908*1 (Bankr.E.D.Pa.1991); *Shields v. Sec'y of Veterans Affairs (In re Shields),* 148 B.R. 783, 786–87 (Bankr. E.D.Pa.1993). While we agree with Judge Scholl, we do not find the answer in the extant case law which dealt with actions grounded in common law fraud. Rather we find that we must look to the language of the statute and ask whether a fraudulent conveyance action is embraced by the language of § 5524(7) "any other action or proceeding sounding in trespass, including fraud."

In the absence of a specific statute of limitations for fraudulent conveyances, most jurisdictions treat a fraudulent conveyance action as a fraud action for statute of limitations purposes. *United States v. Franklin National Bank,* 376 F.Supp. 378, 382 (E.D.N.Y.1973) (citing 128 A.L.R. 1289 (1940) and cases cited therein). *See also In re Munoz,* 111 B.R. 928, 932 n. 3 (D.Colo.1990); *Palatine National Bank v. Strom (In re Strom),* 97 B.R. 532 (Bankr.D.Minn.1989). However, as the *Franklin National Bank*

---

15. The law of Pennsylvania is clearly different than the law of New York construed in *Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 27 N.E.2d 814 (Ct.App.1940) upon which the Trustee relies. The fraudulent conveyance action there, unlike the instant case, sought, *inter alia,* a receiver to take over the assets of the debtor fraudulently conveyed and an accounting. Finding that such action was not "an action to recover damages for fraud (Civil Practice Act § 48(5)) nor an action at law (Civil Practice Act § 48(1)) but one in equity for rescission", the *Hearn* court applied the ten

year residuary statute of limitations of Civil Practice Act § 53. *Id.* at 142, 27 N.E.2d 814. As discussed in the Practice Commentaries to the Civil Practice Law and Rules enacted in New York in 1962, "paragraph 1 [i.e., "an action for which no limitations is specifically prescribed by law"] corresponds with CPA § 53, and reduces the residual statute of limitations from 10 to 6 years. This period, *which governs actions in equity,* had always been unnecessarily long." 7B CPLR § 213 at 445 (emphasis added).

court recognized, the jurisdictions so holding have a special statute of limitations for fraud actions which is separate and apart from the tort statute of limitations. By amending § 5524 to add new subsection (7), Pennsylvania is such a jurisdiction. Unlike the pre-amendment cases which, according to the Third Circuit Court of Appeals, had erroneously relied on subsection (3) which made no mention of fraud, an action in fraud is now expressly governed by the two year statute of limitations.

Parsing the language of the subsection, we note that the phrase "including fraud" appears to modify "action or proceeding sounding in trespass." In that sense the statute differs from the statutes of limitations of other states that cover fraud actions generally. At the time of the amendment, there was uncertainty regarding the application of the two year statute of limitations of existing § 5524(3) to actions in both common law fraud and for fraudulent conveyances. The amendment was intended to resolve that uncertainty. Finding no reason to believe the legislature would have distinguished between common law fraud and fraudulent conveyances, we think the legislature intended that a fraudulent conveyance be treated for statute of limitations purposes as a trespass. A trespass is "an unlawful interference with one's person, property or rights." *Black's Law Dictionary* 1502 (6th ed. 1990). A fraudulent conveyance, whether by intentional fraud or constructive fraud, is an unlawful interference with the rights of creditors of an insolvent estate to realize the value of the property of that estate in payment of their claims.

■■■ The proper characterization of a fraudulent conveyance as a tort or a contract for the purposes of the statute of limitations has been the subject of considerable discussion.[16] Aside from the legislative declaration contained in § 5524(7), we believe that a fraudulent conveyance is more akin to a tort than a contract. In *Doyle v. Lipoff (In re Penn Packing Co.)*, 42 B.R. 502, 505 (Bankr. E.D.Pa.1984), Judge Goldhaber found that an action under Pennsylvania's Fraudulent Conveyance Act is essentially a tort. Decided before the two year statute had been expanded to include torts other than actions for taking, detaining or injuring personal property, the holding that the two year statute of limitations then applied was subsequently held incorrect because not all torts were covered. However, the conclusion that a fraudulent conveyance is a tort has not been disputed in Pennsylvania jurisprudence.[17]

**16.** In at least one state, the nature of the creditor's claim determines the applicable statute of limitations for a fraudulent conveyance action brought by a trustee pursuant to § 544. *See Stevens Linen Associates v. Crawford (In re Stevens Linen Associates, Inc.)*, 156 B.R. 718, 720 (Bankr.D.Mass.1993). Like this Court, the *Stevens* Court recognized that the nature of the remedy did not determine the appropriate statute of limitation but rather that the remedy is incidental to the claim. *Stevens* relied on the decision of the First Circuit Court of Appeals in *Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir. 1967) which stated that statutes of limitation applicable to law actions based on contract and tort are also applicable to suits in equity and to decide which statute applies, it is necessary to determine the essential nature of the plaintiff's claim. If this theory were applied in Pennsylvania, the four year statute would apply if the creditor's claim is for breach of contract whereas the two year statute would apply if the creditor's claim is sounded in tort. *See In re Morse Tool, Inc.*, 108 B.R. 384, 387 (Bankr.D.Mass.1989) (fraudulent conveyance action is ancillary to a debt which may be contractual but can also derive from any number of other sources, such as a tort, a property judgment or from a tax statute). This result seems illogical and arbitrary when the trustee's avoiding powers are for the benefit of the estate and not one particular creditor.

The Trustee cites to *Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162 (N.D.Ill.1990) for what he believes to be the more accurate view of a fraudulent conveyance claim as being "equitable or quasi-contractual in nature and not a tort." As stated above, in Pennsylvania an action can be both equitable and sound in tort. The former contemplates the type of remedy; the latter the nature of the claim.

**17.** We believe this conclusion is supported by the historic nature of the action. Modern fraudulent conveyance law has its origin in the English penal Statute of 13 Eliz., Ch. 5 (1570), commonly referred to as the Statute of Elizabeth. The statute was enacted to render void all transfers of property made by debtors with intent to delay, hinder or defraud creditors. The penalty for violation of the statute was forfeiture of all or some part of the value transferred and upon conviction of fraud, imprisonment. Private persons did not have a right to sue under the Statute

See also Colonial Realty, 168 B.R. at 509 (limitations period applicable to torts applies to fraudulent conveyance actions absent specific statutory exclusion). Thus, we find that the Trustee's claim to avoid certain transfers of property of the Debtor on the basis of fraud under the UFCA is governed by the two year statute of limitations of 42 Pa. C.S.A. § 5524(7).

Since the transactions which the Trustee seeks to avoid occurred in 1990, more than two years prior to the filing of the involuntary bankruptcy petition, the Trustee's claim under Pennsylvania law would appear to be barred by application of the statute of limitations imposed by 42 Pa.C.S.A. § 5524(7).[18] This is, of course, unless the Trustee were to establish that the statute of limitations was tolled during the period prior to the commencement of the bankruptcy case. Although not mentioned by any party, Pennsylvania law would likely consider applying common law tolling principles in determining the applicable statute of limitations for a fraudulent conveyance action. The tolling doctrine of "adverse domination," which has been described as follows, may be applicable here:

> Under the doctrine of adverse domination, the statute of limitations is tolled for as long as a corporate plaintiff is controlled by the alleged wrongdoers.... The doctrine is based on the theory that the corporation which can only act through the controlling wrongdoers cannot reasonably be expected to pursue a claim which it has against them until they are no longer in control.

Resolution Trust Corp. v. Farmer, 865 F.Supp. 1143, 1151 (E.D.Pa.1994). See In re Lloyd Securities, Inc., 153 B.R. 677, 684–85 (E.D.Pa.1993); In re Numedco, 1991 WL 204908 (Bankr.E.D.Pa.1991). Since the Trustee has pled facts to raise a claim of control of Debtor by the Individual Defendants, see Opinion at 13, the Court cannot dismiss the possibility that the equitable tolling doctrine of adverse domination might be applicable in this case. Given that possibility, it is inappropriate to grant the motion to dismiss Count VII as barred by the statute of limitations. Harry Levin, 175 B.R. at 571–72 (quoting Sisseton–Wahpeton Sioux Tribe v. U.S., 895 F.2d 588, 591 (9th Cir.), cert. denied, 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990) ("where the issue of limitations requires a determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law.")).

■■■■ Sufficiency of Allegations. Finally, the Court considers the Individual Defendants' assertions that the Trustee failed to allege that they were transferors or transferees of property of the Debtor. Contrary to this assertion, however, the Trustee did allege that the individuals were transferees when he alleged that Johnston, Chambers, and Paul "each received a substantial amount of the loan proceeds provided by [Bank] in the [1990 Transaction]...." Amended Complaint at ¶ 95. Additionally, Trustee also alleged that Johnston obtained a security interest in property of the Debtor as a result of the 1990 Transaction. Amended Complaint at ¶ 19. The creation of a security interest in the property of a debtor also constitutes a transfer. See In re Osage Crude Oil Purchasing, Inc., 103 B.R. 256, 261 (Bankr. N.D.Okl.1989). This does not end the inqui-

---

because of its penal nature. However, since the forfeiture was intended to benefit judgment creditors, they were permitted to ignore the fraudulent transfer and levy directly on the property transferred. A central problem with the Statute of Elizabeth was that it required proof of subjective fraudulent intent of the person making the transfer and this was difficult to establish because fraudulent intent is rarely admitted and may be obscured in a transfer, seemingly valid. To overcome this problem, English courts began to examine the objective circumstances of the transfer and to identify certain characteristics as "badges of fraud". The existence of these badges of fraud created a presumption that the debtor had intended to make a fraudulent transfer. The Statute of Elizabeth or a similar provision was adopted by statute or common law in every state. L. Forman, The Origins, History and Fundamentals of Fraudulent Conveyance Law (Phila.Bar.Educ. Center/Pennsylvania's New Uniform Fraudulent Transfer Act), Oct. 13, 1994, at 1–3.

18. This only applies to the Pennsylvania UFCA claims, since the six year statute of limitations on the Michigan UFCA claims had not run prior to the filing of the involuntary bankruptcy case.

ry, however, because the Trustee did neglect to assert an essential element of his cause of action against each of the Individual Defendants, i.e., that the transfers received by them were fraudulent and are avoidable under the UFCA. Accordingly, the Trustee has failed to state a claim for which relief can be granted against each of the Individual Defendants under the UFCA. Consistent however with our prior stated view, we will grant the Trustee leave to amend so as to cure his deficient pleading if he can.

## III. MOTION II

A. COUNTS I, II, III—Avoidance of Fraudulent Transfers and COUNT IV—Equitable Subordination.

██ Responding to Count I of the Amended Complaint, the Bank contends that the reasoning which underlies dismissal of the § 548(a)(1) count of the Original Complaint against the Corporate Defendants, PA Load Rite and JAC, is also applicable here and that similarly, the § 548(a)(1) claim of Count I against it must also be dismissed.

In the Opinion and Order of 7/15/94, while the Court denied the request to dismiss Count I against the Individual Defendants because sufficient facts were alleged to support a finding that they were in a position to direct the activities of the Debtor and to cause the foreclosures and sales to occur, the Court did dismiss as to the Corporate Defendants because Trustee pled no facts which would have supported a similar claim against them. Opinion at 18.

Upon review of the Amended Complaint, it is clear that the Trustee has alleged no facts which would support a claim that the Bank in any way controlled or exerted control over the Debtor in a way that would have caused the foreclosures and sales to occur.[19] Because the focus of Code § 548(a)(1) is the actions of the debtor/transferor, *id.*, not the transferee, Count I of the Amended Complaint against the Bank as it seeks relief under § 548(a)(1) shall be dismissed because

Trustee has failed to state a claim for which relief can be granted.[20]

██ The Bank also argues that Counts I through IV should be dismissed because each of the counts relies to one extent or another on allegations that the Bank participated in a fraud, and that Trustee has failed to plead with requisite particularity under Fed. R.Civ.P. 9(b) the facts and circumstances backing up its claims.

The Court is mindful that in deciding the Motions to Dismiss it is not deciding the case on its merits. Opinion at 10. Moreover, as discussed, *supra*, in considering a Fed. R.Civ.P. 9(b) motion to dismiss the Court must not lose sight of the principles of flexibility embodied in the modern scheme of federal pleading. *See, e.g., Seville Indus. Machinery Corp.,* 742 F.2d at 791.

Upon review of the Amended Complaint the Court is satisfied that the Trustee has discharged his burden under Fed.R.Civ.P. 9(b) of placing Defendants on notice of the precise misconduct for which he seeks redress (Amended Complaint at ¶¶ 24, 32, 37, 38, 39, 40, 50, 51 and 56), under Code § 548 (Amended Complaint at ¶¶ 48–54), under the UFCA (Amended Complaint at ¶¶ 55–59), and which conduct might require the equitable subordination of claims under Code § 510(c) (Amended Complaint at ¶¶ 64–68). The Trustee identified the Debtor's unsecured creditors (Amended Complaint at ¶¶ 52, 59, 67), and the estate as the defrauded parties (Amended Complaint at ¶ 62). Taken together these allegations are sufficient to give rise to colorable claims against the Bank under each of Counts II and IV. The Bank's additional contention that the Amended Complaint should be dismissed because the Trustee has failed to provide enough detail after having already conducted extensive discovery, including the taking of the deposition of a Bank loan officer, is rejected. This is a complex case involving transactions occurring long ago and in which the Trustee did not play a part. So long as the Trustee has pled sufficient facts to sup-

---

**19.** Nor does the Trustee's brief suggest a basis for finding the Bank to be in control of the Debtor. *See* Trustee's Combined Response and Brief in Opposition to Motion at 6.

**20.** The dismissal does not impact the Trustee's alternative claim under § 548(a)(2).

472

port the fraud Counts, as we have found, the fact that discovery has been provided (the extent of which is not part of this record) is not dispositive of our decision. Accordingly, the Bank's Motion to dismiss Counts I–V under Fed.R.Civ.P. 9(b) shall be denied.

### B. COUNT V—Failure to Comply with Notice Provisions of U.C.C.

■ Count V is based on Article 6 of the U.C.C. as adopted in Pennsylvania and Michigan. As stated by the Court in its prior decision, the gravamen of Count V is that Defendants failed to comply with the requirements of U.C.C. § 6–105 because Defendants failed to give notice to creditors as prescribed by U.C.C. § 6–107. The obligation to provide notice under § 6–105 is imposed upon the "transferee". However, Trustee has pled no facts supporting a conclusion that the Bank was a transferee required to give notice to creditors. If the Bank is a transferee, it would have the benefit of U.C.C. § 6–103(3)(c) relating to sales of collateral pursuant to U.C.C. § 9–504. Indeed as the Bank correctly points out, if the Trustee's theory of a unitary transaction is accepted, the Bank cannot be considered a transferee. Accordingly, Count V shall be dismissed against the Bank.

### C. COUNT VI—Disposition of Debtor's Assets in a Commercially Unreasonable Manner.

■ The Bank contends that Count VI should be dismissed because the Trustee lacks standing to enforce the provisions of the U.C.C. governing the disposition of collateral. In support of this argument, Bank asserts that: a) Trustee failed to allege that Debtor was injured by the Bank's disposition of its assets; and b) even assuming *arguendo* that a commercially unreasonable sale did occur, Debtor was not injured by the Bank's conduct because Debtor had no equity in the property.

With regard to the first of these arguments, the Court finds that the Trustee did sufficiently allege that Debtor was injured by the Bank's sale of its assets. Amended Complaint at ¶¶ 51 and 88. Second, the Trustee alleged that the sale of Debtor's assets was not conducted in a reasonable manner and that the Bank failed to obtain a fair value for the assets. *Id.* at ¶ 88. Trustee also alleged, *inter alia,* that the Bank made no attempt to obtain adequate appraisals of the Debtor's assets, *id.* at ¶ 87, that the Bank did not advertise, *id.* at ¶ 82, or attempt to investigate the potential market for the Debtor's property, *id.* at 83, but instead sold the assets to PA Load Rite and JAC at the request of Johnston, Paul and Chambers who were insiders of the Debtor. *Id.* at 81. As previously noted by the Court, the bare assertion that there was no equity in the property is not sufficient to overcome the presumption of truth accorded to Trustee's allegations, and the reasonable inferences to be drawn therefrom when considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See* Opinion at 16. Consequently, the Court cannot conclude that there was no equity in the assets of the Debtor at the time the transfers were made. *Id.* Accordingly, Count VI shall not be dismissed.

### D. COUNT VII—Avoidance of 1990 Transaction as a Fraudulent Conveyance.

The Bank, incorporating the arguments of the Load Rite Defendants, contends that Count VII of the Amended Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) due to passage of the two year statute of limitations provided by 42 Pa.C.S.A. § 5524(7) applicable to fraud claims. As discussed in Part II. D of this Opinion, *supra,* the Court has determined that Count VII should not be dismissed as to the Pennsylvania UFCA because of the possible applicability of the equitable tolling doctrine of adverse domination.

### E. COUNT VIII—Avoidance of Preferential Transfers.

■ The Bank incorporates the arguments presented by the Load Rite Defendants who contend that Count VIII should be dismissed under Fed.R.Civ.P. 12(b)(6) for failing to state a claim for which relief can be granted because at the time of the 1992

foreclosures and sales, the Bank's security interest was still in effect, and Bank was merely exercising its rights to liquidate its collateral.[21]

Assuming all of the allegations of the Amended Complaint are true, as the Court must on a motion to dismiss, then the 1990 Transaction must be viewed as constituting a fraudulent conveyance under the UFCA. The individual Defendants state the well-accepted proposition that fraudulent conveyances are voidable, not void per se. Accordingly, they reason that the transfers constituting the 1990 Transaction remained effective as of the time of the 1992 foreclosures and were effective as of the filing date of the involuntary petition. From this, they conclude that the Bank must therefore be viewed as a secured creditor at the time of the 1992 foreclosures and sales acting to liquidate its collateral in full or partial satisfaction of the secured debt. If so, it follows that the transfer merely reduced the secured debt owed to the Bank and would not have enabled the Bank to receive more than it would receive in a Chapter 7 liquidation. Code § 547(b)(5). Since the Trustee would not be able to satisfy all of the elements necessary to avoid the transfers under Code § 547(b), Count VIII, they contend, must be dismissed for failing to state a claim for which relief can be granted.

The flaw in this argument is that, unlike the cases they rely upon,[22] the Trustee has in Count VII challenged the transaction pursuant to which the Bank received its lien. Indeed, Count VIII is expressly premised on the assumption that the Trustee obtains a judgment in his favor against the Bank in Count VII which is based on state fraudulent conveyance law. Amended Complaint at ¶ 99. This then is the requisite action necessary to uncover a fatal flaw in the transaction without which the Bank's liens would remain undisturbed. Nonetheless, we tend to agree with the Individual Defendants in their analysis of the practical effect of this cause of action. Specifically, if the 1990 Transaction is found to be a fraudulent conveyance, the avoidance of the Bank's lien is not the only potential consequence. The Trustee appears to have isolated the Bank's lien without dealing with the implications of an unwinding of the 1990 Transaction and its impact on the 1992 foreclosures and sales. However, because we are faced now with a Motion to Dismiss and cannot find that there is no set of facts in support of the Trustee's claim that would entitle him to relief, we will deny the Motion to Dismiss Count VIII keeping in mind that Count VIII depends at a minimum on the success of Count VII for its survival.

An Order consistent with the foregoing Opinion will be entered.

### ORDER

**AND NOW,** this 23rd day of March, 1995, upon consideration of the Motion to Dismiss the Second Amended Complaint (the "Complaint") under Fed.R.Civ.P. 12(b)(6) ("Motion I") filed by Defendants Load Rite Trailers, Inc., Donald A. Paul, and J. Bruce Chambers, and the Motion to Dismiss the Complaint under Fed.R.Civ.P. 12(b)(6) and 9(b) ("Motion II") filed by Defendant Bank of America, Illinois, formerly known as and named as a party herein as Continental Bank, N.A., and upon consideration of the parties' pleadings and briefs submitted in connection therewith, and for the reasons

---

21. While generally joining in the Load Rite Motion, the Bank does not address in its Motion the dismissal of this Count while it does specifically proffer various grounds for dismissal of Counts I–V.

22. In finding against the trustee, the court in *In re Wlodarski*, 115 B.R. 53, 57–58 (Bankr.S.D.N.Y. 1990), a case cited by the Individual Defendants, recognized that the trustee did not contest the perfection and validity of the mortgage as of the commencement of the case or at the time the property was sold. Had she done so, and been successful, presumably the result would have been different since the trustee can avoid those liens that can be avoided by a lien creditor under applicable state law. *See also In re Paolini*, 11 B.R. 317, 318 (Bankr.W.D.N.Y.1981) (because fraudulent conveyance law is not self-operating and creditor had not acted, creditor had no remedy subsequent to Chapter 7 filing although right to avoid conveyance passed to trustee under § 544.)

stated in the accompanying Opinion, it is hereby **ORDERED** that:

### MOTION I

1. Motion I is **GRANTED** to the extent that it seeks dismissal of Count VII for failure to (a) state a proper basis for the Trustee's standing to bring the action to avoid the 1990 Transaction, and (b) plead that the transfer received by the Individual Defendants were fraudulent and avoidable under UFCA, provided, however, that the Trustee may file a further amended Complaint pursuant to Fed.R.Civ.P. 15 to remedy, if he can, the deficiencies in Count VII set forth in pages 11–15 of the accompanying Opinion;

2. Count V of the Motion is amended to delete the request for appointment of a receiver;

3. Motion I is otherwise **DENIED;**

### MOTION II

4. Motion II is **GRANTED** with respect to Count V of the Complaint against the Bank which is **DISMISSED** under Fed. R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted;

5. For the reasons stated in paragraph 3 of this Order, Motion II is **GRANTED** to the extent that it seeks dismissal of Count VII provided, however, that the Trustee may file a further amended Complaint as set forth in paragraph 3 hereof;

6. Motion II is otherwise **DENIED;** and

7. The Trustee may file an amended Complaint within thirty (30) days from the date of this Order making only those amendments specifically allowed as set forth herein.