David C. **PROFILET**, not individually but as Chapter 11 Trustee of the Estate of the Debtor Aspen Marine Group, Inc., Plaintiff,

v.

**CAMBRIDGE FINANCIAL CORP.** et al., Defendants.

No. 97–8116–Civ–MOORE.

United States District Court, S.D. Florida, West Palm Beach Division.

Feb. 11, 1999.

Raul A. Arencibia, Michael A. Keith, Bailey Harper Cronig Baker Arencibia & Agudo, Miami, FL, for plaintiff.

William R. Scherer, Conrad & Scherer, Fort Lauderdale, FL, Stephen Charles Page, Gunster Yoakley Valdes–Fauli & Stewart, Stuart, FL, Harvey L. Rubinchik, Plantation, FL, Stewart Paige Chambers, Fort Lauderdale, FL, James Martin McCann, Jr., Akerman Senterfitt & Eidson, West Palm Beach, FL, R. Michael Underwood, Rutledge Ecenia Purnell & Hoffman, Tallahassee, FL, Robert Rex Edwards, Fort Lauderdale, FL, Allan M. Lerner, Lerner & Pearce, Fort Lauderdale, FL, Victor Gutierrez, Miami, FL, Joseph Patchen, Larlisle Patchen & Murphy, Columbus, OH, Larry Mesches, Koeppel Gottlieb & Mesches, West Palm Beach, FL, for defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon the following Motions:[1]

(1) Kipnis, Tescher, Lippman, Valinsky & Kain ("Tescher"), Jay Valinsky and Michelle Kain's Motion to Dismiss (DE # 38);

(2) Greg R. Neilsen, Warren E. Platt, William C. Gibbs and Snell & Wilmer's ("Snell & Wilmer") Motion to Dismiss Plaintiff's First Amended Complaint (DE # 45);

(3) Peter Gullo ("Gullo") and Creedence Corporation's ("Creedence") Motion to Dismiss Plaintiff's First Amended Complaint (DE # 57);

(4) Ella Chesnutt ("Chesnutt"), Steve Dorrough ("Dorrough"), Joseph Chow ("Chow"), Golden Investment Group ("Golden") and Paul Herman's ("Herman") Motion to Dismiss (DE # 72);

(5) Heiskell, Donelson Berman n/k/a Baker, Donelson, Bearman & Caldwell's Motion to Dismiss (DE # 75);

(6) Chatfield Dean & Co.'s ("Chatfield") Motion to Dismiss Plaintiff's First Amended Complaint (DEs # 81/113);

(7) Brett Salter's ("Salter") Motion to Dismiss Plaintiff's First Amended Complaint (DE # 87);

(8) Robert Wyner's ("Wyner") Motion to Dismiss Plaintiff's First Amended Complaint (DE # 98);

(9) Gerard Haryman's ("Haryman") Motion to Dismiss Plaintiff's First Amended Complaint (DE # 105);

(10) Jorge Galvez's ("Galvez") Motion to Dismiss Plaintiff's First Amended Complaint (DE # 143);

(11) Robert Baker's ("Baker") Motion to Dismiss (DE # 148); and

(12) First Yale Financial's ("First Yale") Motion to Dismiss (DE # 159).

UPON CONSIDERATION of the motions, responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

The facts as alleged in the amended complaint are as follows:[2] Plaintiff David C.

1. Plaintiff David C. Profilet, as Trustee, has filed this action against 52 defendants. As of the date of this Order, default has been entered as to nine Defendants, three Defendants were voluntarily dismissed, two are proceeding with arbitration, five have answered the amended complaint, and 22 have filed motions to dismiss all or a portion of the amended complaint. The remaining defendants either have not been served with the amended complaint or have not appeared in the case. The Court will address the instant motions in this single order as they raise similar issues and arguments. Where necessary, the Court has indicated and addressed certain specific arguments when they differ. The Court's reference to "Defendants" in this motion refers to all the defendants, collectively, who have filed motions to dismiss.

2. The amended complaint consists of 47 pages and 18 exhibits. The facts as laid out in this section merely state the general allegations in the amended complaint. Additional facts the Court considered in making its rulings on the instant motions are outlined in this Order as necessary.

Profilet ("Trustee"), in his capacity as Chapter 11 Trustee of the Estate of Debtor Aspen Marine Group, Inc. ("AMGI"), brings this action against Defendants in connection with the bankruptcy of AMGI.

AMGI is a Colorado corporation whose principal business was the manufacture and sale of boats. In May 1992, AMGI made an initial public offering ("IPO") of its stock, which was listed on the NASDAQ National Market. Shortly after the IPO, AMGI met a series of financial setbacks. The Trustee alleges such setbacks occurred as a result of the mismanagement and dissipation of assets. In early 1993, the price and volume of transactions involving AMGI stock increased dramatically, with no corresponding improvement in AMGI's business performance. Thereafter, between July 1993 and May 1994, AMGI issued tens of millions of shares of stock. The Trustee alleges the stock issuances were induced by the reckless or willful misrepresentations and omissions concerning the validity and propriety of the stock issuances by AMGI's management, attorneys, accountants and underwriter and by the recipients of the stock. In addition to the stock issuances, AMGI announced, through press releases and Securities and Exchange Commission ("SEC") filings, a series of transactions that were never consummated. These announcements caused AMGI's stock price to remain artificially high and a number of recipients of the stock then sold their shares to take advantage of the artificially high price.

In April 1994, AMGI's stock price fell below the NASDAQ floor and AMGI was delisted from the NASDAQ market. On December 13, 1994, AMGI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The Trustee has filed a thirteen-count amended complaint against numerous parties connected with AMGI. The complaint alleges the following violations by these parties: Section 10(b) and Rule 10b–5 of the Exchange Act (Count I); Section 9 of the Exchange Act (Count II); Section 16 of the Exchange Act (Count III); Breach of Fiduciary Duty (Count IV); Florida Blue Sky Law Section 517.301 (state securities laws) (Count V); Florida RICO Act (Count VI),

Breach of Contract (Count VII); Fraudulent Inducement (Count VIII); Fraudulent Transfer (11 U.S.C. § 548) (Counts IX and X); Fraudulent Transfer (Fla.Stat. § 726) (Counts XI and XII); and Legal Malpractice (Count XIII).

Defendants have filed separate motions to dismiss based on the facts as alleged in the amended complaint with respect to that party. Many of the arguments raised are either applicable to the count as a whole or are adopted by multiple parties. Thus, where possible, the Court will address each count as against all Defendants.

## I. Violation of Section 10 of the Exchange Act and Rule 10b–5 Promulgated Thereunder (Count I)

Defendants, in one form or another, essentially raise the following arguments in support of their motions to dismiss count I of the amended complaint: the Trustee has no standing to maintain a suit on behalf of AMGI; the Trustee has failed to plead fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"); and the Trustee has failed to plead scienter or any strong inference of scienter as required under the Securities Exchange Act of 1934 (the "Exchange Act") and the PSLRA. The Court will address each argument in turn.

### A. Standing

A threshold question the Court must answer is whether the Trustee has standing to maintain a securities fraud action on behalf of AMGI under Section 10 and Rule 10b–5 of the Exchange Act. The Exchange Act (in conjunction with the Securities Act of 1933) was "designed to provide investors with full disclosure of material information ... and to protect investors against fraud ... and manipulation of stock prices ..." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 195, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Defendants argue that AMGI, as an issuer of securities, is the party required to make the disclosures mandated by the securities laws. As a result, the Exchange Act arguably does not protect issuers from misrepresentations

and omissions. Therefore, Defendants' conclude the Trustee has no standing to assert claims under the Exchange Act and thus no remedy against Defendants.

■ The law in this area is unclear. Neither the parties nor the Court has found authority in the Eleventh Circuit explicitly supporting either parties' position.[3] The Trustee, however, cites *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 200–03 (5th Cir.1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961)[4], as establishing that a bankruptcy trustee on behalf of a debtor corporation as issuer of stock has a private right of action for violations of Section 10 and Rule 10b–5. Although the securities laws have evolved since the *Hooper* decision and Defendants question its reasoning, *Hooper* remains valid. Furthermore, there is case law outside the Eleventh Circuit that Defendants have not refuted tending to support the Trustee's position. *See Estate of Soler v. Rodriguez*, 63 F.3d 45, 54 (1st Cir. 1995) ("It is now well-established that a corporation has a claim under § 10(b) if the corporation was defrauded in respect to the sale of its own securities by some or even all of its directors."); *In re Stat–Tech Securities Litig.*, 905 F.Supp. 1416, 1423 (D.Colo.1995) (holding that corporation emerging from bankruptcy has standing under 10b–5 because "it is 'well established' that § 10(b) and Rule 10b–5 protect corporations as well as individuals. Thus a corporation that issues its own stock in reliance on another's deceptive or manipulative practice may be deemed a 'seller' with standing to sue under § 10(b) and Rule 10b–5.") (citing *Hooper; Superintendent of Ins. Of New York v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)). The Court further notes that the securities laws were not designed solely to protect investors but also to "deter fraud and manipulative practices in securities markets and to ensure full disclo-

sure of information material to investment decisions." *Randall v. B.J. Loftsgaarden*, 478 U.S. 647, 664, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986). Based on the foregoing, the Court finds the Trustee has standing to bring a § 10 and Rule 10b–5 claim against the Defendants.

## B. Particularity Under Rule 9(b) and the PSLRA

■ While the Trustee may have standing to bring this action, the Trustee must still comply with the necessary pleading requirements. Thus, Defendants further argue that count I of the amended complaint should be dismissed because the Trustee has failed to comply with the requirement that fraud be plead with particularity. *See* Fed.R.Civ.P. 9(b). Rule 9(b) of the Federal Rules of Civil Procedure provides that

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

The purpose of Rule 9(b) is to "alert defendants to the precise misconduct with which they are charged and protect defendants against spurious charges of immoral or fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1371 (11th Cir.1997) (quotations omitted). In addition, Rule 9(b) must be read in conjunction with Rule 8(a) so as not to "abrogate the concept of notice pleading." *Id.* Thus, Rule 9(b) may be satisfied if the complaint sets forth the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; and
>
> (2) the time and place of each statement and the person responsible for making (or in the case of omission, not making) same; and

is merely seeking damages under the securities laws.

---

**3.** In *Liberty Nat'l Insurance Holding Co. v. Charter Co.*, 734 F.2d 545 (11th Cir.1984), the Eleventh Circuit held there was no implied right of action in an issuer of securities involved in a purchase made in violation of Rule 10b–5 to compel the wrongdoer to rescind the transaction or otherwise divest himself of the securities he acquired. The Trustee in this action, however, is not seeking this type of relief. Here, the Trustee

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

(3) the content of such statements and the manner in which they misled the plaintiff; and

(4) what the defendant obtained as a consequence of the fraud.

*Id.*

■ In response, however, the Trustee argues—and the Court agrees—that courts should relax the specificity requirements where the plaintiff is a trustee in bankruptcy. *In Re Sverica Acquisition Corp.,* 179 B.R. 457, 463 (Bankr.E.D.Pa.1995) ("Given the inevitable lack of knowledge concerning the acts of fraud previously committed against the debtor, a third party, courts have held the particularity requirement of [Rule 9(b)] may be relaxed."); *In Re O.P.M. Leasing Services, Inc.,* 32 B.R. 199, 203 (Bankr. S.D.N.Y.1983) (discussing the liberality in pleading requirements in bankruptcy cases). With this standard in mind and based on a detailed review of the allegations in the amended complaint, the Court finds the Trustee has met the requirements of Rule 9(b).

More relevant, however, has been the passage of the PSLRA. The PSLRA modified and strengthened—beyond Rule 9(b)—the pleading requirements in securities fraud actions. Section 78u–4(b)(1) of the statute provides:

In any private action arising under this chapter in which the plaintiff alleges the defendant

(A) Made an untrue statement of a material fact; or

(B) Omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

Section 78u–4(b)(2) addresses the required state of mind:

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity, facts giving rise to a strong inference that the defendant acted with the required state of mind.

The statute further states that upon a motion of any defendant, the Court *shall* dismiss the complaint if the pleading requirements are not met. *Id.* § 78u–4(b)(3) (emphasis added).

■ In a claim alleging violations of Section 10 and Rule 10b–5, a plaintiff must prove the following: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiff relied; and (5) that proximately caused his injuries. *Tuchman v. DSC Communications Corp.,* 818 F.Supp. 971, 976 (N.D.Tex.1993), *aff'd,* 14 F.3d 1061 (5th Cir.1994). Scienter is defined as "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst,* 425 U.S. at 193 n. 12, 96 S.Ct. 1375. In the Eleventh Circuit, scienter may be established by "proof of misconduct which is knowing or extremely reckless in that it reflects an extreme departure from the standards of ordinary care." *In re Sahlen & Assocs. Securities Litig.,* 773 F.Supp. 342, 358 (S.D.Fla.1991). To show a "strong inference" of scienter in securities fraud cases, a plaintiff must allege either (1) facts to show the defendant had both the motive and opportunity to commit fraud or (2) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Fischler v. AmSouth Bancorporation,* 1996 WL 686565 (M.D.Fla.) (citing *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir.1994)).

Based on these heightened requirements, Defendants argue count I of the amended complaint should be dismissed because the Trustee has failed to plead fraud with particularity and also has failed to plead scienter. The Trustee argues that Defendants' reading of § 78u–4(b) "would require the Trustee to mechanically tell this Court why each statement was misleading" and that "to require

the Trustee to plead in such a rote manner when such facts can be gleaned from the amended complaint would render the pleading requirements of the PSLRA a mere tautology."[5] The Trustee also argues the PSLRA was passed largely to control strike suits and there is no legislative history to suggest that the drafters contemplated extending it to this context.[6]

The Court has reviewed the amended complaint in detail and finds the Trustee has met its burden under the PLSRA. The Trustee details the events and parties involved in the alleged scheme to defraud AMGI and while there is a lack of particularity with respect to specific statements made by the respective defendants, the Court is mindful that pursuant to the requirements of the PSLRA, very little, if any, discovery has been conducted. Furthermore, the Court finds the allegations in the amended complaint clearly meet the strong inference requirement in that they provide evidence of "conscious misbehavior or recklessness" on the part of Defendants. Most importantly, the Court finds the amended complaint sufficiently provides Defendants with fair notice of the Trustee's claims against them and allows Defendants to formulate defenses to such claims.

Thus, while the Court notes the possibility that certain of the Trustee's claims may not survive summary judgment, the Court finds the Trustee at this stage has sufficiently met the pleading requirements under both Rule 9(b) and the PSLRA. As a result, Defendants' motions to dismiss count I will be denied.

## II. Violation of Securities Exchange Act § 9 (Count II)

In Count II, The Trustee alleges that Defendant Galvez manipulated the market price of AMGI securities in violation of Section 9 of the Exchange Act. Galvez argues the Trustee has failed to plead particularity with respect to the fraud charges. The Court already has addressed this argument above and finds the allegations in the amended complaint sufficient. Accordingly, Galvez's motion to dismiss count II will be denied.

## III. Breach of Fiduciary Duty (Count IV)[7]

In count IV, the Trustee alleges that defendants Herman, Chow, Dorrough, Chesnutt, Baker and Haryman, as directors or officers of AMGI, owed a fiduciary duty to AMGI's shareholders. The Trustee alleges these directors/insiders breached their fiduciary duties by engaging in self-dealing transactions, exercising their powers in their own self interest and discharging their duties in a grossly negligent, fraudulent, willful and criminal manner. Defendants move to dismiss this count on the basis that the Trustee has failed to plead particularity with respect to the allegations against these defendants. As discussed earlier, the Court finds the allegations in the amended complaint sufficient to meet the pleading requirements. Accordingly, Defendants' motions to dismiss count IV will be denied.

## IV. Violation of Florida Blue Sky Law § 517.301 (Count V)

 Defendants argue the Trustee has failed to meet the pleading requirements under Fla.Stat. § 517 (Florida Securities Investor Protection Act). Generally, claims under the Florida securities laws have the same statutory requirements as those under Rule 10b-5. Thus, to establish a claim under § 517.301, a plaintiff must establish the following: (1) a misrepresentation or omission of a material fact; (2) justifiably relied on; (3) that the misrepresentation or omission was made in connection with a purchase or sale of securities; (4) with scienter or reckless disregard as to the truth of the communications; and (5) that the untruth was the direct proximate cause of the loss. *First Union Brokerage v. Milos*, 717 F.Supp. 1519,

5. The Court notes that this heightened burden is precisely the result Congress intended when it passed the PSLRA.

6. While this may be true, the Court does note that there is no legislative history specifically stating it would *not* extend to this context.

7. In count III the Trustee alleges violations of Securities Exchange Act § 16. Each of the defendants named in count III either have defaulted or have not appeared in the case and thus the Court need not address the merits of this count.

1523 (S.D.Fla.1989), *aff'd,* 997 F.2d 835 (11th Cir.1993).

■ The primary differences concerning the Florida statute are that scienter is satisfied by showing a showing of mere negligence, rather than reckless disregard, and that a plaintiff must plead justifiable reliance. As discussed earlier, the Court finds the allegations in the amended complaint meet the pleading requirements of Rule 10b–5 and therefore § 517. The Trustee has failed, however, to plead that AMGI "justifiably relied" on the actions of Defendants as required by the statute. Thus, because the Trustee has failed sufficiently to plead an element necessary to bring a claim under § 517.301, Defendants' motions to dismiss count V will be granted. This dismissal, however, will be without prejudice.

## V. Violation of Florida Rico Act (Count VI)

■ The Florida RICO Act was derived from the federal RICO act. *State v. Lucas,* 600 So.2d 1093, 1094 (Fla.1992). To establish a claim under the Florida RICO Act, a plaintiff must allege the following: (1) the existence of an ongoing enterprise/organization which one is associated with in committing the alleged acts; (2) a pattern of racketeering activity; and (3) at least two incidents of racketeering or racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that are otherwise interrelated by distinguishing characteristics and are not isolated incidents. *Shimek v. State,* 610 So.2d 632, 634–35 (Fla.Dist.Ct. App.1992), *cert. denied,* 510 U.S. 921, 114 S.Ct. 320, 126 L.Ed.2d 266 (1993). Furthermore, while *no provision of the Florida RICO statute explicitly provides for a "continuity" requirement,* the Florida Supreme Court has stated that the Florida Rico Act includes a continuity requirement similar to the federal RICO statute. *Id.* (citing *Bowden v. State,* 402 So.2d 1173 (Fla.1981)). The Florida Supreme Court recently reaffirmed the continuity requirement. In *State v. Lucas,* the court approved the standards announced by the United States Supreme Court in *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), concerning the continuity requirement and the proof necessary to establish it.

■ In *H.J.,* the Supreme Court explained the continuity requirement:

Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition ... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Id.* at 241–42, 109 S.Ct. 2893. Thus, the continuity requirement can be satisfied either by showing past conduct that by its nature shows a threat of future racketeering or by showing repeated racketeering acts over a substantial period of time.

Assuming without discussion that the Trustee has sufficiently alleged predicate acts to establish a pattern of racketeering activity, the Court finds the Trustee has failed to state a claim under the Florida RICO Act because he cannot satisfy the continuity test. The Trustee alleges one scheme in this action: defrauding and bankrupting AMGI. The scheme was close-ended and the allegations in the amended complaint do not allege any future criminal conduct. Thus, viewing the facts as alleged by Trustee, the purposes of the scheme were accomplished and the scheme completed. *See Jones v. Lampe,* 845 F.2d 755 (7th Cir.1988) (holding that numerous predicate acts involving one scheme that took several months to complete did not amount to sufficient RICO pattern of criminal activity). The Trustee has not alleged that Defendants regularly engage in this type of conduct nor has he alleged in any manner how Defendants could inflict further injury upon AMGI. Although the Court is mindful that one scheme scenarios may, at times, satisfy the necessary pattern of racketeering activity, *see Bank of America National Trust & Savings v. Touche Ross &*

*Co.,* 782 F.2d 966 (11th Cir.1986), the Court in this case finds no threat of long-term criminal activity amounting to a pattern of racketeering activity.[8] As a result, the Court finds a pattern of racketeering activity cannot be shown and thus the Trustee cannot prove a set of facts in support of his claim. Accordingly, count VI of the amended complaint will be dismissed in its entirety.

## VI. Breach of Contract (Count VII)

 The elements for a breach of contract action under Florida law are (1) the existence of a contract, (2) a breach thereof and (3) damages. *Anthony Dist. v. Miller Brewing Co.,* 941 F.Supp. 1567, 1574 (M.D.Fla.1996) (citing *Miller v. Nifakos,* 655 So.2d 192, 193 (Fla.Dist.Ct.App.1995)). The Trustee has alleged that Defendants Salter, Golden, Gullo, Creedence, First Yale and Galvez all agreed to be bound by terms of "consulting agreements" with AMGI and each defendant failed to perform pursuant to the terms of each agreement. Based upon a review of the amended complaint, the Court finds the Trustee has plead prima facie cases of breach of contract against Defendants and thus their motions to dismiss count VII will be denied.

## VII. Fraudulent Inducement and Fraudulent Transfer (Counts VIII, IX and X)

The Trustee alleges that Defendants fraudulently induced AMGI to issue stock to Defendants for inadequate consideration by promising AMGI they would perform certain services in return for the stock, even though they had no intention to perform the ser-

vices. Defendants again argue the Trustee has failed to plead these counts with particularity. The Court has addressed this argument and based on the discussion above, Defendants' motions to dismiss counts VIII, IX and X will be denied.

## VIII. Violation of Florida Statute § 726.105 and § 726.106 (Counts XI and XII)

 Defendants argue the Trustee has failed to state a cause of action under Florida's Uniform Fraudulent Transfer Act. Fla. Stat § 726. 101 *et seq.* The Trustee brings claims under Section 726.105 and 726.106. Although the Trustee does not indicate in the amended complaint under which subsections of § 726 the claims are brought, the Trustee in his response to Defendants' motions indicates the claims are brought under Sections 726.105(1)(b) and 726.106(1). These sections provide that a transfer may be fraudulent if the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer." In the amended complaint, the Trustee alleges that Defendants obtained stock from AMGI when AMGI was insolvent and "without [AMGI] receiving a reasonably equivalent value." Based on the allegations in the amended complaint, the Court finds the Trustee has plead prima facie cases of fraudulent transfer under Florida law. Accordingly, Defendants' motions to dismiss counts XI and XII will be denied.[9]

## IX. Legal Malpractice (Count XIII)

 The Trustee argues that Defendants Tescher, Kain, Valinsky and Snell & Wilmer

---

8. The Trustee argues that the Florida Supreme Court in *State v. Lucas* found that activities occurring over a six-month period could satisfy the closed-ended continuity requirement. In addition, the Trustee argues the court approved the result in *U.S. v. Busacca,* 936 F.2d 232 (6th Cir.1991), in which the Sixth Circuit determined that activities over a two and a half month period could satisfy the open-ended continuity requirement. Thus, the Trustee argues this Court cannot dismiss the claims based on some arbitrary time period. The Court first notes that it does not base its dismissal on a time period. Furthermore, *Lucas* and *Busacca* are distinguishable because in each case, the offending party could have continued its illegal activity and thus "the nature of [each of] their operations implicitly

suggested continuing activity." *Lucas,* 600 So.2d at 1095. Here, the Defendants could not continue their alleged illegal activity because AMGI is no longer viable. Finally, the Trustee does not allege any of the illegal activities engaged in by Defendants was part of their regular way of doing business. *Id.*

9. In count XI, the Trustee alleges that Defendant Chatfield represented they would perform services pursuant to consulting agreements and violated § 726 by receiving AMGI stock. The Trustee, however fails to request any relief from Chatfield. Accordingly, as to defendant Chatfield only, count XI will be dismissed without prejudice.

committed legal malpractice when they issued opinions on behalf of AMGI concerning the validity of the issuance of S–8 stock. Defendant Tescher argues the amended complaint fails to state any damages suffered by AMGI as a result of Defendants' alleged negligence and thus this claim must be dismissed. Snell & Wilmer argue the Trustee's claim for legal malpractice must be dismissed because it was not brought within the two-year statute of limitations under the Bankruptcy Code.

With respect to Tescher's argument, the Court finds no basis to dismiss the claim. The Trustee seeks "to recover damages ... including, without limitation, the value of the AMGI securities improperly issued, and the losses proximately caused to AMGI's business by Defendants' negligent conduct ..." Whether the Trustee can prove such damages is a question to be determined later but at this stage the Court finds the Trustee has sufficiently plead damages. Thus, Tescher's motion to dismiss count XIII will be denied.

■ With respect to Snell & Wilmer's argument, AMGI filed its voluntary Chapter 11 petition on December 13, 1994. The Trustee filed the original complaint in this action on December 12, 1996. There is no dispute that the original complaint was filed within the applicable statute of limitations.[10] The Trustee filed the amended complaint on January 5, 1998 adding, among other things, the claim for legal malpractice against Snell & Wilmer. Snell & Wilmer argue that any new causes of action contained in the amended complaint fall outside the two-year statute of limitations and thus are barred.

■ Rule 15(c)(2) of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Snell & Wilmer argue correctly that the critical issue when determining relation back is whether the defendant had notice of the new claims. *See*

*Moore v. Baker,* 989 F.2d 1129, 1131 (11th Cir.1993). Naturally, Snell & Wilmer argue they had no notice of the legal malpractice claim and thus the new allegations in the amended complaint do not relate back. This argument is meritless. The original complaint concerned allegations against Snell & Wilmer under the federal and state securities laws and RICO. In this Court's view, Snell & Wilmer was clearly on notice that the facts and circumstances surrounding the original allegations could certainly have resulted in negligence and legal malpractice claims.

Accordingly, Snell & Wilmer's motion to dismiss count XIII will be denied.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

(1) Defendants' Motions to Dismiss Count I are DENIED.

(2) Defendant Galvez's Motion to Dismiss Count II is DENIED.

(3) Defendants' Motions to Dismiss Count IV are DENIED.

(4) Defendants' Motions to Dismiss Count V are GRANTED. Count V is dismissed without prejudice.

(5) Defendants' Motions to Dismiss Count VI are GRANTED. Count VI is dismissed with prejudice.

(6) Defendants' Motions to Dismiss Count VII are DENIED.

(7) Defendants' Motions to Dismiss Counts VIII, IX and X are DENIED.

(8) Defendants' Motions to Dismiss Counts XI and XII are DENIED.

(9) Defendants' Motions to Dismiss Count XIII are DENIED.

The Trustee shall have twenty (20) days from the date of this Order to file a seconded amended complaint if the Trustee so chooses. Such amended complaint shall only correct the deficiencies the Court noted in Count V of the amended complaint and outlined in footnote nine of this Order. Any further

---

**10.** Section 108 of the Bankruptcy Code provides that nonbankruptcy actions related to the bank-ruptcy may be filed within two years after the filing of the original bankruptcy complaint.

amendments to the amended complaint will be stricken.