**In re ERNIE HAIRE FORD, INC., Debtor.**

**William M. Roberts as Liquidating Agent for Ernie Haire Ford, Inc., Plaintiff,**

**v.**

**Gregory Balasco, et al., Defendants.**

**Bankruptcy No. 8:08–bk–18672–MGW. Adversary No. 8:10–ap–00512–MGW.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 2, 2011.

Geoffrey Todd Hodges, G.T. Hodges, PA, Lutz, FL, Hans Christian Beyer, Law Office of Hans Christian Beyer, P.A., Tampa, FL, for Plaintiff.

Michael P. Brundage, Hill Ward & Henderson, P.A., Charles G. Geitner, Hinshaw & Culbertson LLP, C. Read Sawczyn, Sivyer Barlow & Watson, P.A., Steven R. Wirth, Akerman Senterfitt, Tampa, FL, Stephen F. Baker, Stephen F. Baker, PA, Winter Haven, FL, Joel D. Medgebow, Medgebow Law PA, Louis F. Leo, IV, Leo Law Group PA, Coconut Creek, FL, Ted W. Weeks, IV, Ted W. Weeks, IV, PA, Lakeland, FL, Donald J. Schutz, Schutz & Schutz, St. Petersburg, FL, for Defendants.

Vicar Auto Wholesale Corp., Orlando, FL, pro se.

Tampa Bay Auto Sales, LLC, St. Petersburg, FL, pro se.

TCOB International, Inc., Miami, FL, pro se.

Robert H. Stetson, Seffner, FL, pro se.

Richard & Pamela Mabry, Inc., Clearwater, FL, pro se.

Alberto Ramos, Plant City, FL, pro se.

Joseph Orbezo, Tampa, FL, pro se.

Marie Samantha Murphy, Tampa, FL, pro se.

Kenneth Delton McBride, Tampa, FL, pro se.

Omar Maiwandi, New Port Richey, FL, pro se.

M & D Motors, Inc., Largo, FL, pro se.

Kasey Angela Krauss, Plant City, FL, pro se.

K & C Automotive, Inc., Tampa, FL, pro se.

International Motor Sports, Inc., Tampa, FL, pro se.

Ideal Automotive Group, Inc., Oviedo, FL, pro se.

Hurricane Motors, Tampa, FL, pro se.

Jeffrey J. Gonzalez, Tampa, FL, pro se.

Executive Motors, Inc., Tampa, FL, pro se.

Lennox R. Dick, Tampa, FL, pro se.

Cuzz's Autosales, Inc., Plant City, FL, pro se.

The Corner of Tampa, Inc., Tampa, FL, pro se.

Clearwater Auto Exchange, Inc., Dunedin, FL, pro se.

Clean Cars of Tampa, LLC, Tampa, FL, pro se.

Carrollwood Auto Repair & Sales, Inc., Tampa, FL, pro se.

Joseph Caputo, Tampa, FL, pro se.

Randall H. Carl, Valrico, FL, pro se.

C.F.L. Auto Group, Inc., Tampa, FL, pro se.

Bargain Auto Sales of Lakeland, Inc., Lakeland, FL, pro se.

Gregory Balasco, Tampa, FL, pro se.

### ORDER GRANTING MOTIONS TO DISMISS AND MEMORANDUM OPINION ON JOINDER AND PLEADING REQUIREMENTS

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This action is brought by William Roberts as the liquidating agent appointed pursuant to the terms of a confirmed plan of reorganization [1] ("**Plaintiff**"). Plaintiff seeks to avoid numerous fraudulent transfers of the Debtor's used vehicle inventory that were allegedly consummated through the operation of various kickback schemes and to recover the proceeds generated by the perpetration of the alleged kickback schemes. Defendants Automotive Fleet Enterprises, Inc. ("**AFE**") and Eide Motors, Inc. ("**Eide**") moved to dismiss the action, arguing, in part, that the Plaintiff has improperly joined all forty-two of the named defendants in a single action, and

that Plaintiff has failed to satisfy the pleading requirements of his claims for relief. The Court agrees with AFE and Eide that the defendants have been improperly joined and that Plaintiff has failed to comply with the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Accordingly, the motion to dismiss the amended complaint will be granted without prejudice.

### Summary of the Amended Complaint

More than fifteen months after Plaintiff filed his initial complaint [2] against a single defendant, Gregory Balasco, Plaintiff filed, with leave of this Court,[3] an amended complaint (Doc. 109) against forty-two named defendants and an unspecified number of "John Does" (the "**Complaint**"). The Complaint contains ten counts, six of which are against various classes of defendants, defined generally in the Complaint as the "Ernie Haire Ford Defendants" ("EHF Defendants"), the "Wholesaler Defendants," and the "Auction Defendants."

---

1. See Case No. 8:08–bk–18672–MGW ("Main Case"), Doc. 743, ¶¶ 8, 24.

2. The initial complaint contained allegations related to two different kickback schemes referred to in the complaint as the "hidden real estate kickback scheme" and the "used vehicle kickback scheme." Plaintiff subsequently filed a notice of voluntary dismissal with prejudice of counts I–V related to the hidden real estate kickback scheme (Doc. 31). The used vehicle kickback scheme forms the basis of Plaintiff's amended complaint.

3. Decretal paragraph 24 of the Order Confirming Debtor's Second Amended Plan ("Confirmation Order") (Main Case, Doc. 743) assigned all causes of action to Plaintiff pursuant to section 7.9 of the Debtor's Second Amended Plan (Main Case, Doc. 699). Section 7.9 of the Second Amended Plan ("Plan") provided that Plaintiff would have until the Litigation Bar Date, defined in the Plan as the date 120 days following the Effective Date, which in turn is defined in the Plan as the first business day following the date the

Confirmation Order is entered, to commence new litigation. The Confirmation Order was entered on October 14, 2009, thereby making the Effective Date October 15, 2009, and the Litigation Bar Date February 12, 2010. On February 10, 2010, Debtor filed a Motion for Enlargement of Time (Main Case, Doc. 952), in which Debtor sought to extend the Litigation Bar Date as to certain individuals for 90 days. The Court entered an Order granting the Motion for Enlargement and extending the Litigation Bar Date to May 24, 2010 (Main Case, Doc. 958). The instant adversary proceeding was commenced on April 23, 2010 (Adversary, Doc. 1). On May 13, 2011, the Court entered an Order Setting Deadline to File Amended Adversary Complaint (Adversary, Doc. 94), which provided Plaintiff until June 30, 2011 to file an appropriate paper seeking to amend the initial Complaint. On June 27, 2011, Plaintiff filed a Motion for Leave to File First Amended Complaint (Adversary, Doc. 102), which the Court granted on July 27, 2011 (Adversary, Doc. 108). The Amended Complaint was then filed on July 29, 2011 (Adversary, Doc. 109).

While each of the forty-two named defendants falls within one of the three foregoing classes of defendants, the Complaint does not specifically identify any of the alleged wrongful conduct of particular defendants, but rather groups together all three classes of defendants, collectively, as single units of wrongdoers.

With respect to the underlying general allegations of the Complaint, the Plaintiff alleges the existence of various schemes in which the three classes of defendants, as a whole, are believed to have participated. For example, Plaintiff alleges the existence of a general "Used Vehicle Kickback Scheme,"[4] pursuant to which various individuals who had been employed by the Debtor defrauded the Debtor by transacting unauthorized sales of the Debtor's used vehicle inventory with various automotive dealerships at less than market value; recording false, inflated sales prices; and then retaining a portion of the sales proceeds as kickbacks from the dealerships for selling the vehicles at below-market rates.

The Used Vehicle Kickback Scheme is alleged to have been conducted through various iterations, including what is described as the basic scheme, referred to in the Complaint as the "Direct Sale Used Vehicle Kickback Scheme,"[5] which allegedly also contained a component referred to as the "Fraudulent Floor–Planning Practice."[6] While the Plaintiff claims to have uncovered at least eighty-one instances where the "Fraudulent Floor–Practices" were implemented, Plaintiff has described with detail only a single specific example of the general scheme in actual operation.[7] Additionally, Plaintiff further alleges that the Used Vehicle Kickback Scheme extended to the Debtor's motorcycle inventory,[8] and that eventually, the alleged perpetrators of the scheme devised an improved, more sophisticated scheme, which was harder for the Debtor's management to detect, referred to in the Complaint as the "Auction Sale UVKS."[9]

Notably, while Plaintiff has described the various schemes, and has set forth the mechanics of how the schemes operated in theory, Plaintiff has not—with the exception of the single transaction identified in paragraphs 125–137 of the Complaint—alleged the specific involvement of the named defendants in any particular, identifiable fraudulent transactions. Instead, Plaintiff relies on the general underlying allegations regarding the existence of the various schemes as the basis to proceed against the named defendants in each count of the Complaint. Significantly, the defendants are not specifically identified in each count according to their own alleged wrongdoing, but are, instead, lumped together simply as members of a certain class of defendants and as general participants in the alleged schemes.

For example, in count I for fraudulent conveyance, brought pursuant to 11 U.S.C. § 544(b) and Florida Statutes section 726.105(1)(a), Plaintiff sues "the EHF Defendants, the Wholesaler Defendants, and the Auction Defendants ... to avoid and recover any concealed proceeds from the sale of used vehicles owned by [the Debtor] through the Used Vehicle Kickback Scheme and received by, or for the benefit of, any of the EHF Defendants, the Wholesaler Defendants, or the Auction De-

4. Complaint, ¶¶ 89–110.

5. Complaint, ¶¶ 118–123.

6. Complaint, ¶ 123, Step 7.

7. Complaint, ¶¶ 125–137.

8. Complaint, ¶¶ 138–156.

9. Complaint, ¶¶ 157–165.

fendants."[10] The remaining allegations of count I are couched in similar terms, and refer to the defendants only by their group labels. For example, Plaintiff alleges that "the Used Vehicle Kickback Scheme was orchestrated and administered by the EHF Defendants with the active and knowing assistance of the Wholesaler Defendants and the Auction Defendants," and that "the Wholesaler Defendants transferred a portion of the improperly inflated profit which they received on account of the Used Vehicle Kickback Scheme to the EHF Defendants."[11] The other counts of the Complaint are alleged in a similar manner, with the Plaintiff describing the alleged misconduct of the defendants in a collective fashion and referring to the defendants not individually by name but rather as part of the overall class of "EHF Defendants," "Wholesaler Defendants," or "Auction Defendants."

Both AFE and Eide are identified in the Complaint as individual members of the "Wholesaler Defendants" class of defendants.[12] Accordingly, they appear to be subject to counts I–III (actual and constructive fraudulent conveyances), count IV (conspiracy), count VII (conversion), and count VIII (unjust enrichment) of the Complaint. These six counts have been brought against all defendants (i.e., all three classes of defendants), including AFE and Eide as part of the "Wholesaler Defendants."[13]

AFE and Eide filed identical motions to dismiss the Complaint,[14] arguing, in part, that (i) Plaintiff has failed to satisfy the pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure; and (ii) the defendants have been improperly joined. The Court agrees and will therefore grant AFE and Eide's motions to dismiss, without prejudice, so that Plaintiff may file a second amended complaint that complies with the Court's directives, as discussed below.

### Conclusions of Law

**I. Plaintiff Has Improperly Joined All Defendants in a Single Action and Must File Separate Complaints Against Each Named Defendant**

The forty-two named defendants are improperly joined in the same action. Rule 20(a)(2) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding through Rule 7020 of the Federal Rules of Bankruptcy Procedure, permits parties to be joined as defendants in a single action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." While there are two tests under Rule 20 that must both be satisfied before joinder will be permitted, the Court focuses on only the first test. The Court finds that Plaintiff has not alleged claims that would give rise to joint or several liability of all the defendants. Nor do the claims alleged satisfy the transactional require-

---

10. *See* Complaint, count I, introductory paragraph preceding ¶ 166.

11. *See* Complaint, ¶¶ 168–169.

12. Complaint, ¶¶ 32, 33, 50.

13. The remaining counts, including counts V and VI, for violations of Florida's RICO Act and civil theft, respectively, are brought against certain named defendants not including AFE or Eide. Likewise, count IX for breach of fiduciary duty and count X for equitable accounting and turnover are brought against certain named defendants not including AFE or Eide. Accordingly, this Order does not address or encompass those counts.

14. Adversary Doc. 133, 134.

ment of Rule 20 under applicable law, given the distinct and independent alleged wrongdoing on the part of each individual defendant. Therefore, the Court finds that the first requirement for permissive joinder has not been met.

■■■ Merely engaging in the same wrongful conduct, without any other apparent connection between defendants, is insufficient to satisfy the transactional requirement of Rule 20.[15] Where transactions involve different parties, different contracts, and different terms of dealing, they are not part of the same series under Rule 20, notwithstanding that the alleged wrongdoing is effectuated in the same general way.[16] "Merely committing the same type of violation in the same way does not link defendants together for purposes of joinder."[17] Similarly, the fact that multiple defendants have caused the same type of injury to the plaintiff, and have inflicted such injury in the same manner, does not permit joinder of otherwise unrelated defendants.[18]

These principles have been applied in bankruptcy cases in both a fraudulent conveyance[19] and unauthorized post-petition payment context.[20] For example, in *Shubert*, the creditor-plaintiff, whose cash collateral the debtor had been authorized to use until a specific date, filed suit against twenty-four defendants who were the alleged recipients of payments made with the plaintiff's cash collateral after the cash collateral deadline had passed. Addressing the propriety of joinder of these defendants, the court rejected the notion that defendants may be joined in a single lawsuit "simply because they are all purportedly liable to the plaintiff on similar or identical causes of action."[21]

Ultimately, the court found that the transactional relatedness standard of Rule 20 had not been established and, therefore, that the defendants had been improperly joined. In a particularly relevant assessment of the complaint, the court wrote:

> The complaint simply avers that in a discrete series of transfers, each unconnected to any other, various entities re-

**15.** *MDM Group Assocs., Inc. v. Midgett Realty, Inc.*, 2008 WL 2756926 (D.Colo. July 14, 2008) (holding that the alleged unauthorized copying of the plaintiff's copyrighted marketing brochure by five unrelated defendants did not constitute a series of transactions for joinder purposes).

**16.** *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir.1988) (holding that unrelated bank defendants had been improperly joined in the same action where the plaintiff's business dealings with each individual defendant involved different loan terms, despite the same underlying charge that the banks had exacted excessive interest in the same fraudulent way).

**17.** *LaFace Records, LLC v. Does 1–38*, 2008 WL 544992 *2 (E.D.N.C. Feb. 27, 2008). *See also Boy Racer, Inc. v. Does 1–60*, 2011 WL 3652521 (N.D.Cal. Aug. 19, 2011) (stating that simply engaging in the same generally prohibited conduct does not result in a series of related transactions or occurrences for Rule

20 purposes, and dismissing plaintiff's claims on misjoinder grounds despite allegations that defendants had engaged in same wrongdoing by distributing copyrighted work through the use of the same file sharing network).

**18.** *In the Matter of DIRECTV, Inc.*, 2004 WL 2645971 (N.D.Cal. July 26, 2004).

**19.** *U.S. v. Katz*, 494 F.Supp.2d 645, 648 (S.D.Ohio 2006) (characterizing the fraudulent conveyances against one defendant as "separate and distinct" from the fraudulent conveyances of the other defendants and holding plaintiff's attempted joinder of three different groups of defendants improper where the relief sought did not arise out of the same transaction or occurrence).

**20.** *NPF X, Inc. v. Shubert (In re Nuclear Imaging Systems, Inc.)*, 277 B.R. 59 (Bankr.E.D.Pa. 2002).

**21.** *Id.* at 63.

ceived estate funds. One transfer has no relationship with any other beyond the common source for payment. Were this sufficient for joinder under Rule 20, then bankruptcy trustees would be permitted to bring one lawsuit for all preference actions, one lawsuit for all fraudulent conveyance actions, and one lawsuit to collect all prepetition receivables." [22]

Like the common source of payment in *Shubert*, a common overarching kickback scheme does not make the defendants related, or otherwise engender a series of transactions, for permissive joinder purposes. While many of the defendants have been sued on the same causes of action by virtue of their alleged participation in the same kickback scheme, the individual transactions bear no relationship to one another other than allegedly being the product of the same general scheme.

The Court finds the legal principles and reasoning applied in the foregoing cases applicable to the instant proceeding. Here, Plaintiff has alleged the existence of various kickback schemes and the participation of the defendants in those schemes. However, other than allegedly having committed the same general wrongdoing in similar fashion, the named defendants do not share a relationship with one another. Rather, the transactions allegedly consummated by any individual defendant appear to be separate and distinct from those of the other defendants.

At the group level, there is no allegation that the "Wholesaler Defendants" participated in the auction schemes, or *vice versa* (i.e., that the "Auction Defendants" participated in the wholesale kickback schemes). Moreover, even for defendants within the same group, there are no allegations that the defendants did not act independently of one another.[23] Finally, at an individualized level, there are no allegations that the specific defendants, such as AFE and Eide, were engaged in each and every transaction, or that their alleged participation in the kickback scheme was related to or impacted any of the other defendants' participation in the scheme.

Even assuming that the defendants engaged in the general misconduct alleged in the Complaint, there are no factual allegations that would support the transactional relatedness requirement of Rule 20. Merely operating the same type of business and allegedly committing the same wrong in the same way is insufficient to join otherwise unrelated defendants. Likewise, the fact that the Debtor suffered the same type of injury, inflicted in similar manner by the defendants, is insufficient. Thus, there is no logical basis to find that the independent transactions consummated by unrelated defendants constitute a series of transactions that would be necessary to link the defendants together for joinder purposes. Accordingly, the Court will exercise its discretion [24] to dismiss the Complaint without prejudice against all the

**22.** *Id.* at 64–65.

**23.** While there is an allegation in count IV for conspiracy that "the EHF Defendants, the Wholesaler Defendants, and the Auction Defendants entered into a confederation to execute the complex, fraudulent, and illegal Used Vehicle Kickback Scheme to the detriment of EHF," the Plaintiff clarified at the hearing conducted on September 7, 2011 that it is not his position that each defendant expressly agreed and acted in concert with each other

defendant that they would all, collectively, carry out the kickback schemes. *See* Complaint, ¶ 199.

**24.** *See Michaels Building Co.*, 848 F.2d at 682 (affirming the trial court's dismissal of the claims against the misjoined parties, and noting that "[t]he manner in which a trial court handles misjoinder lies within that court's sound discretion").

named defendants. The Court also will dismiss this proceeding against all named defendants except Balasco,[25] thus requiring Plaintiff to re-file complaints against each other individual defendant in separate adversary proceedings.[26]

 Furthermore, the Court has discretion under Rule 20 to disallow joinder, even where the requirements of Rule 20 are satisfied.[27] Thus, even if the relief sought in the Complaint can be said to have arisen out of the same series of transactions, the Court may consider other relevant factors that would militate against joinder. The primary factor under the Court's consideration is the potential prejudice to the defendants of having to proceed in a single action.[28]

From a pretrial discovery perspective, the Court recognizes the practical difficulties associated with having to clear deposition dates with over forty parties and their counsel so that a deposition, which, in all likelihood, would be relevant only to a particular defendant, could be properly scheduled. Likewise, the financial costs to the parties of attending such depositions, either individually and/or through counsel, would be monumental. Even if a particular deposition does not appear from the notice to relate directly to the other parties, those other parties may still well desire (and would certainly have a right if they remained joined in a single action) to attend.

Moreover, although the Court is unable to discern how many transfers each defendant may have to defend, it is possible that some defendants may only have to defend a single transfer, whereas other defendants may have been involved in many more. Additionally, not all claims are brought against all defendants. As a result, there are likely to be various pre-trial issues posed by certain defendants that would not be germane to many of the other defendants. In order to avoid (i) the unfairness to those defendants who may have relatively little at stake; and (ii) the issues and concerns associated with the "individualized discovery"[29] that would likely occur if this action were permitted to proceed with forty-two defendants, the Court finds that individual adversary proceedings are appropriate.

25. Since Balasco was the initial—and only—named defendant when Adv. Pro. No. 8:10–ap–512–MGW was commenced, this proceeding (with this case number) will remain pending against Balasco only. However, Plaintiff is still required to file an amended complaint against Balasco in this proceeding that complies with the Court's additional ruling on the applicable pleading requirements, as discussed below.

26. While the Court recognizes that this ruling will require Plaintiff to institute over forty adversary proceedings, the ruling is consistent with the remedies fashioned by other courts faced with similar circumstances. See Boy Racer at *4 (dismissing the plaintiff's case without prejudice to plaintiff filing individual actions against the 53 remaining defendants); IO Group v. Does 1–435, 2011 WL 445043 (N.D.Cal. Feb. 3, 2011) (upholding previous order which dismissed the complaint as to all 435 defendants but one); DIRECTV, 2004 WL 2645971 at *12 (in action against 775 improperly joined defendants, dismissing claims against all defendants except first-named defendant without prejudice to plaintiff to re-file separate actions against all other defendants).

27. See Wynn v. Nat'l Broad. Co., Inc., 234 F.Supp.2d 1067, 1078 (N.D.Cal.2002) (noting that even if the requirements of Rule 20 are satisfied, there is no requirement that must be joined); Arrington v. City of Fairfield, Ala., 414 F.2d 687, 693 (5th Cir.1969) (court has discretion under Rule 20 to decide the scope of the action).

28. MDM Group Assocs. at *4.

29. Id. See also Shubert, 277 B.R. at 65 (noting the potential for unfairness to defendants who were sued for small dollar amounts and who were not subject to all the claims for relief).

■ Accordingly, the Complaint will be dismissed against all defendants, without prejudice, so that Plaintiff may re-file individual adversary proceedings against the defendants, consistent with the Court's additional rulings, which are detailed below. While the parties have not raised in the motions to dismiss any potential statute of limitations issues, to the extent that a re-filed complaint may be subject to a statute of limitations defense, the Court finds that any re-filed complaint by the Plaintiff will relate back to the date of the Complaint, July 29, 2011.[30]

## II. Plaintiff Must Comply with the Pleading Requirements Set Forth in Rules 8 and 9(b) of the Federal Rules of Civil Procedure

In addition to arguing that Plaintiff has misjoined all defendants in a single action, AFE and Eide also argue that the Complaint must be dismissed as a "shotgun pleading," and that Plaintiff has failed to meet the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

The Court notes a lack of consensus on what constitutes a "shotgun pleading."[31] While the Complaint does not incorporate the allegations pertaining to each prior count into the allegations of each successive count, the Plaintiff has structured the Complaint such that all the general allegations relating to the various kickback schemes and an unspecified number of transactions have been combined into single counts. The result is a long, convoluted statement of facts.[32] Plaintiff has not distinctly pled the underlying transactions in separate counts.[33]

At a minimum, the Complaint—if not technically a shotgun complaint—does have a quasi-shotgun sense about it, which stems from the manner in which Plaintiff has pled the underlying factual allegations. Not only does Plaintiff group together the individual defendants into classes, but he also seeks liability in certain counts against all three groups of defendants. For example, with respect to the six counts that AFE and Eide are subject to, because Plaintiff seeks liability against all three groups of defendants, he must incorporate the underlying general allegations against all three groups. As a result, the Complaint leads to a collective pleading and a lack of individualized pleading.

As discussed below, the Court, by this Order, requires the Plaintiff to file amended complaints that comply with Rules 8 and 9(b). Coupled with the Court's order requiring the institution of individual adversary proceedings, this ruling should alleviate AFE and Eide's concerns about the "shotgun" feel of the Complaint.

**30.** *See DIRECTV,* 2004 WL 2645971 at *6, 12 (allowing any re-filed separate actions against dismissed defendants to be deemed a continuation of the original action); *Katz,* 494 F.Supp.2d at 649 (treating potential statute of limitations defense in re-filed action against dismissed defendant as if defendant had not been dismissed from lawsuit).

**31.** *See Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 650 n. 22 (11th Cir.2010) (stating that a shotgun complaint involves several counts where allegations are incorporated even though immaterial to the specific claim at hand); *Popham v. Cobb County, Georgia Gov't,* 392 Fed.Appx. 677, 679 (11th Cir.2010)

(describing a shotgun complaint as containing several counts, each one incorporating by reference allegations of previous counts); *Pelletier v. Zweifel,* 921 F.2d 1465, 1517–18 (11th Cir.1991) (stating that a shotgun complaint is replete with factual allegations that could not possibly be material to causes of action being asserted); *see also Mascaro Aviation, L.L.C. v. Diamond Aircraft Indus., Inc.,* 2011 WL 865805 (S.D.Fla. Mar. 8, 2011).

**32.** *Mascaro Aviation* at *8.

**33.** *Id.*

With respect to the pleading requirements necessary to survive a motion to dismiss, the pleading landscape for plaintiffs, including trustees in bankruptcy, has changed as a result of the United States Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*[34] and *Ashcroft v. Iqbal*.[35] A plaintiff's complaint must contain enough facts to make the claim for relief "plausible on its face." [36] Facial plausibility exists where the factual allegations allow the court to infer that the defendant is liable for the misconduct alleged.[37] In requiring claims to be plausible, the Court set forth a spectrum of a claim's potential for success, ranging from possible at the lower end, to plausible, to probable at the higher end. While probability is not required, a plaintiff must do more than raise a sheer possibility of the defendant's liability.[38] A complaint must, therefore, contain sufficient factual allegations to nudge the claim for relief from the realm of conceivable to plausible.[39] Facts that are merely consistent with a defendant's potential liability are insufficient to accomplish this task.[40]

With these standards in mind, the Court turns to the instant Complaint. The shortcoming of the Complaint from a Rule 8 perspective is that each defendant's liability is not plausibly demonstrated. There are no factual allegations concerning many of the defendants that would tend to show their involvement and participation in the alleged kickback schemes. Rather, the defendants are lumped together into classes and are then alleged, collectively, to have engaged in fraudulent conduct. Such a manner of pleading does not comport with *Iqbal's* requirement that there be facial plausibility of the defendants' liability.

■ Without any specific factual allegations concerning a particular defendant's participation in the general schemes alleged, the Court is left without a reasonable basis from which it can infer such defendant's liability. The Court cannot infer an individual defendant's liability based merely on the collective pleading style that Plaintiff has utilized. Indeed, in many instances, the only reference to a particular defendant is the identification of that defendant's place of business and the subsequent grouping of that defendant into a collective class.[41] Such allegations raise, at best, a sheer possibility that any particular defendant is liable for the alleged misconduct. Accordingly, the Court finds that the Complaint is deficient in that it does not satisfy the facial plausibility requirement of Rule 8.[42]

**34.** 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**35.** 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**36.** *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

**37.** *Iqbal*, 129 S.Ct. at 1949.

**38.** *Id.*

**39.** *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

**40.** *Iqbal*, 129 S.Ct. at 1949.

**41.** *See, e.g.*, Complaint, ¶¶ 32, 33, 50 (identifying and grouping AFE and Eide).

**42.** *See Jacobs v. Tempur–Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir.2010) (dismissing plaintiff's complaint based on insufficient factual allegations to demonstrate plausibility of antitrust violations). The Court notes that the dissent in *Jacobs* believed that the majority was essentially requiring the plaintiff to include actual evidence in the complaint and to prove its case on the pleadings. *Jacobs*, 626 F.3d at 1346–47 (Ryskamp, J., dissenting). Even if the dissent in *Jacobs* had been the majority, this Court believes that the dissent's concerns have been addressed here. This Court does not believe that requiring Plaintiff to identify the allegedly fraudulent transac-

The pleading analysis does not end at Rule 8, however. Rule 9(b) is also implicated in this action. With respect to the substance of the Complaint, the ultimate, underlying wrongdoing complained of is defendants' participation in various kickback schemes, with the end result being that the Debtor was defrauded. Furthermore, every count in the Complaint is brought pursuant to 11 U.S.C. § 544(b), which allows a bankruptcy trustee to avoid or set aside certain transactions. The transactions encompassed by the Complaint are all the product of one or more alleged fraudulent kickback schemes. As such, the Complaint is one that contains averments of fraud and is therefore subject to the heightened pleading requirements of Rule 9(b).

Rule 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity."[43] The purpose of the particularity requirement is to alert defendants as to the precise misconduct with which they are charged.[44] The particularity requirement can be satisfied by setting forth the "who, what, when, where, and how" of the misconduct constituting the fraud.[45] Rule 9(b) does not abrogate the directives of Rule 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."[46] Further, "[e]ach allegation must be simple, concise, and direct."[47] Here, though, there are several allegations that span multiple pages and include numerous "steps."[48] Yet, for all the verbosity, the allegations omit the critical, precise details that would satisfy Rule 9(b). In order to comply with Rules 8 and 9(b), Plaintiff "must plead facts as to time, place, and substance" of each named defendant's alleged fraud, including the specific details of each defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.[49]

The Court acknowledges Plaintiff's allegation that there is a lack of documentation in certain deal files, which makes it difficult to ascertain the details of those transactions.[50] However, in the very next allegation, Plaintiff notes that his investigative team has uncovered eighty-one instances of one of the allegedly fraudulent practices in operation.[51] Furthermore, the Complaint does adequately describe the operation of the various kickback schemes and names forty-two specific defendants. The Court infers, then, that at least with respect to certain transactions, there is sufficient documentation for Plaintiff to have discovered and described the various schemes and to have formed a basis for

tions to which each particular defendant was a party is the equivalent of proving its case on the pleadings. Rather, the identification of each defendant's involvement in the alleged kickback schemes, through specific transactions or deals, would provide the necessary factual support to make Plaintiff's claims against each defendant plausible.

43. Fed.R.Civ.P. 9(b).

44. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001).

45. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir.2008); *Mascaro Aviation, LLC v. Diamond Aircraft Indus., Inc.*,

2011 WL 856805 *7 (S.D.Fla. Mar. 8, 2011) (adopted at 2011 WL 1114317 (S.D.Fla. Mar. 25, 2011)).

46. Fed.R.Civ.P. 8(a)(2).

47. Fed.R.Civ.P. 8(d)(1).

48. Complaint, ¶¶ 121, 123, 162, 164.

49. *See U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1308 (11th Cir.2002).

50. Complaint, ¶ 124.

51. Complaint, ¶ 125.

naming these defendants as participants in the schemes.

While the Complaint adequately alleges the existence of the schemes themselves, a mere description of the schemes, without specific details of the fraudulent actions of each defendant, is insufficient for Rule 9(b) purposes.[52] The unique circumstances of each defendant's alleged fraudulent conduct must be pled on an individualized basis, without reliance on a collective grouping of defendants.[53] While the general factual allegations of the Complaint describe the mechanics of the kickback schemes, the Complaint fails—with one exception [54]—to identify any specific fraudulent transactions, or describe the details of such transactions, despite the Plaintiff's allegation that his investigative team has reviewed over 10,000 of the Debtor's used vehicle files and has identified as many as 6,000 potential sales conducted through one of the kickback schemes.[55] Accordingly, the defendants are left to speculate as to which, if any, of the identified transactions were ones in which they participated,

and are left without any indication of what particular wrongdoing they allegedly committed. All the defendants are able to gather from the Complaint is that the Plaintiff believes they have, at some unspecified point in time, engaged in some sort of kickback scheme related to an unspecified number of vehicles and with potentially unspecified individuals.[56] The allegations, as pled, do not comply with Rules 8 and 9(b).

■■■ Plaintiff argues that the pleading requirements should be relaxed based on a lack of information available to him. Plaintiff cites *Profilet v. Cambridge Financial Corp.*[57] and *In re Sverica Acquisition Corp., Inc.*[58] in support of this contention. In those cases, the courts noted that, in the context of fraud claims brought by a statutory trustee in bankruptcy, the pleading requirements of Rule 9(b) may be "relaxed" on account of the "inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party." [59] However, even if the Court were inclined to follow that princi-

---

**52.** *See D.H.G. Props., LLC v. Ginn Cos., LLC,* 2010 WL 5584464 *6–7 (M.D.Fla. Sept.28, 2010). *Cf. Lab. Corp. of America,* 290 F.3d at 1311–12 (noting that in suit for violation of False Claims Act, which is subject to Rule 9(b), plaintiff cannot merely describe a fraudulent scheme in detail but then fail to substantiate claims that actual false claims were submitted).

**53.** *See Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir.2011) ("Rule 9(b) 'does not allow a complaint to ... lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.' ") (internal citations omitted).

**54.** *See* Complaint, ¶¶ 125–137. However, even this one example contains certain allegations that are made "upon information and belief" or are couched in terms of "possibilities." *See* Complaint, ¶¶ 133, 134, 137. Other counts also rely on allegations made on information and belief. *See* Complaint, ¶¶ 110, 123–Step 7, 154. In a fraud-based

action, as exists here, allegations made on information and belief are generally held to be insufficient. *See Lab. Corp. of America,* 290 F.3d at 1310–11 (internal citations omitted).

**55.** Complaint, ¶ 115.

**56.** While the Complaint lists several individuals comprising the group of "EHF Defendants," it also alleges that there are "as yet unidentified former employees of EHF" who participated in the kickback scheme, and then lumps these "EHF John Does" into the general "EHF Defendants" group. *See* Complaint, ¶¶ 17–18.

**57.** 231 B.R. 373 (S.D.Fla.1999).

**58.** 179 B.R. 457 (Bankr.E.D.Pa.1995).

**59.** *In re Sverica Acquisition Corp.,* 179 B.R. at 473; *Profilet,* 231 B.R. at 379 (citing *In re Sverica Acquisition Corp.*).

ple,[60] it does not apply here because the Plaintiff, as the bankruptcy trustee/liquidating agent, does not have a lack of knowledge concerning the acts of fraud committed against the Debtor.

Plaintiff has been assisted in the investigation of this matter by Geoffrey Todd Hodges, the Debtor's secretary, treasurer, and general counsel.[61] Hodges and his staff have had, and continue to have, access to the Debtor's files and deal jackets, and have been able to piece together the theoretical operation of the kickback schemes. Notably, Plaintiff alleges that Hodges and his staff have identified eighty-one instances of the fraudulent floor planning scheme, and, as mentioned above, Plaintiff has set forth at least one transaction that he believes was part of the kickback scheme. These allegations belie the Plaintiff's argument that the particularity requirement of Rule 9(b) should be relaxed.[62] Having access to the Debtor's records, and armed with a method of identifying particular transactions as potentially fraudulent, Plaintiff has been able to identify specific transactions that he believes are actionable. Accordingly, Plaintiff must plead the details of those transactions and with the particularity required by Rule 9(b).

Consistent with the Court's ruling on joinder, the Complaint will be dismissed against all defendants, without prejudice, so that Plaintiff may re-file an amended complaint against each individual defendant.[63] In any such re-filed complaints, Plaintiff must identify the particular alleged fraudulent transactions in which each defendant participated, and must comply with Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

## III. Other General Considerations for Any Future Amended Complaints

Before concluding, the Court will address two additional matters of which the parties should take note before any amended complaints are filed. First, the Court will address the Plaintiff's use and the proper scope of 11 U.S.C. § 544(b). Second, the Court will explain its views on Plaintiff's cause of action for conspiracy.

### A. The Scope of 11 U.S.C. § 544(b)

■ Plaintiff has brought claims for conspiracy, conversion, and unjust enrichment against all three groups of defendants.[64] In each of these counts, Plaintiff states that the respective causes of action

---

**60.** The Court notes that at least one court has declined to permit a relaxed pleading standard for bankruptcy trustees. *See In re NE 40 Partners, Ltd. P'ship*, 440 B.R. 124, 129 (Bankr.S.D.Tex.2010) (finding that bankruptcy trustees have a number of tools available to them that would assist in uncovering the requisite facts necessary to support a fraudulent transfer action, such that the relaxed standard is unnecessary).

**61.** *See* Complaint, ¶¶ 2, 143.

**62.** *See U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 673, 688 (W.D.Tex. 2006) (finding that where "insiders" have access to the information on which their claims depend, the relaxed pleading standard of 9(b) is inapplicable).

**63.** The Court does not expect Plaintiff to file a separate adversary proceeding for each allegedly fraudulent transaction, even where one defendant may have allegedly engaged in multiple instances of the alleged kickback schemes. Rather, Plaintiff should bring one adversary proceeding against each identifiable defendant, and in that single proceeding, Plaintiff may include all of the fraudulent transactions believed to have been committed by that defendant.

**64.** In fact, all ten counts of the Complaint, whether they are brought against all three groups of defendants or some lesser portion of the defendant pool, are brought pursuant to § 544(b).

are being brought "pursuant to 11 U.S.C. § 544(b) to recover any concealed proceeds from the sale of used vehicles owned by EHF through the Used Vehicle Kickback Scheme and received by, or for the benefit of, any of the EHF ... Wholesaler ... or Auction Defendants."[65] The Plaintiff may not rely on § 544(b) in this manner.

Section 544(b) of the Bankruptcy Code gives bankruptcy trustees the power to avoid transfers or obligations of the debtor that are avoidable by an actual, existing unsecured creditor under non-bankruptcy law. Section 544(b) is limited by its own terms to avoidance actions. In *In re Fedders North America, Inc.*,[66] the court recognized that trustees are not permitted to use § 544(b) as a means of augmenting the bankruptcy estate by pursuing state law claims for damages related to fraudulent transfers.[67] This conclusion stems from the fact that the trustee's only authority in the Bankruptcy Code to pursue a creditor's state law cause of action related to fraudulent conveyances is found in § 544(b), which allows a trustee only to avoid such transfer, with recovery to be made as provided in 11 U.S.C. § 550.[68]

Plaintiff argues that *Fedders* should be read narrowly as only prohibiting a cause of action for aiding and abetting a fraudulent transfer under § 544(b). Because Plaintiff has not asserted such a claim, Plaintiff contends that *Fedders* is inapplicable. On the other hand, Defendants argue that *Fedders* should be broadly construed as prohibiting Plaintiff from asserting *any* state law cause of action for

damages. The Court finds that *Fedders* requires a middle-ground approach.

If a particular cause of action is necessarily dependent on there being an underlying fraudulent transfer, as is the case with claims for aiding and abetting a fraudulent transfer or conspiracy to commit a fraudulent transfer, then trustees cannot assert such claims pursuant to § 544(b). Furthermore, as § 544(b) is limited by its terms to avoidance actions, it cannot be used as a catchall provision by trustees to assert non-avoidance causes of action. Here, Plaintiff has alleged in each of the ten counts of the Complaint that every claim is brought pursuant to § 544(b), including claims for conspiracy, conversion, and unjust enrichment. Thus, the Complaint, on its face, demonstrates that Plaintiff has asserted claims that fall outside the scope of § 544(b). Since Plaintiff is limited by § 544(b) to avoiding transfers or obligations of the Debtor that are voidable under applicable law,[69] the non-avoidance counts must be dismissed. The only claims where Plaintiff has properly invoked the right to avoid fraudulent transfers pursuant to applicable state law are counts I–III.

This is not to say that Plaintiff cannot pursue non-avoidance claims at all in an amended complaint; he just cannot pursue such claims pursuant to § 544(b). This ruling is entirely consistent with *Fedders*. While *Fedders* can be read as prohibiting trustees from using § 544(b) to assert state law claims for damages related to fraudulent transfers—and is therefore,

---

65. *See* Complaint, Count IV, Count VII, and Count VIII introductory paragraphs, preceding paragraphs 197, 223, and 234, respectively.

66. 405 B.R. 527 (Bankr.D.Del.2009).

67. *Id.* at 548 (explaining that trustees may not use § 544(b) to pursue state law claims for damages related to fraudulent transfers and

dismissing plaintiff's claim for aiding and abetting a fraudulent transfer).

68. *Id.*

69. The applicable law in Florida is the Uniform Fraudulent Transfer Act, codified in chapter 726 of the Florida Statutes ("FUFTA").

contrary to Plaintiff's contention, not limited only to an aiding and abetting theory—it does not preclude trustees from asserting other independent causes of action that may exist. In fact, bankruptcy trustees routinely pursue claims for damages outside the rubric of fraudulent transfer law.[70]

Accordingly, if Plaintiff decides to file an amended complaint against certain individual defendants in individual adversary proceedings—and assuming that the non-avoidance claims brought in counts IV–X can be sufficiently pled—Plaintiff may assert those causes of action, but not through § 544(b). Also, Plaintiff may assert the state law fraudulent transfer claims in counts I–III through § 544(b), with at least the actual fraud count being subject to the heightened pleading requirements of Rule 9(b).[71]

### B. Plaintiff's Cause of Action for Conspiracy

In count IV, Plaintiff has asserted a cause of action for conspiracy against all three groups of defendants. At the hearing on the motions to dismiss, Plaintiff's counsel clarified that the cause of action was one for civil conspiracy. Normally, a claim for civil conspiracy requires the existence of an underlying tort. In the instant case, the most obvious claim would be conspiracy to commit a fraudulent transfer. However, Florida law does recognize civil conspiracy as an independent, stand-alone tort.[72] In such cases, there must be a "peculiar power of coercion" that is possessed and can be exercised by the conspirators, acting in concert, which would not otherwise exist by a single individual acting alone.[73]

In *Walters v. Blankenship*, the plaintiff sued a group of his neighbors for civil conspiracy after the neighbors decided to post for-sale signs at each of their respective condominium units in order to drive down the plaintiff's unit's market value and potential sale price. The court found

---

**70.** *See, e.g., McGregor v. Blount (In re Alabama Protein Recycling, LLC)*, Case No. 2:02–ap–3083 (trustee asserted and prevailed on claims for fraudulent transfer under Alabama statute, as well as for conversion and unjust enrichment), *aff'd* 210 Fed.Appx. 876 (11th Cir.2006); *In re Teknek, LLC*, 354 B.R. 181, 200–01 (Bankr.N.D.Ill.2006) (trustee brought claims for fraudulent transfer and breach of fiduciary duty). Such claims augment the estate and are within the bankruptcy court's "related to" jurisdiction due to the fact that the claims, when brought, could conceivably impact the estate by making available additional funds to be included within the distribution to creditors. *See Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990) (adopting the "conceivable effect" formulation of the test for "related to" jurisdiction as set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

**71.** The Court notes an absence of controlling Eleventh Circuit law on whether Rule 9(b) applies to claims of constructive fraudulent transfers and acknowledges the split in au-

thority regarding this issue. *See In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bankr. D.Del.2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud."); *contra In re Syntax–Brillian Corp.*, 2011 WL 3101809 *7 (Bankr.D.Del. July 25, 2011) (holding that constructively fraudulent transfers are governed by Rule 8). Regardless of whether Rule 9(b) applies to both actual and constructive fraud claims, or only actual fraud claims, the Court nevertheless requires Plaintiff to comply with Rule 9(b) in alleging each individual defendant's participation in the allegedly fraudulent kickback schemes. To the extent that this requirement does not resolve any issues any defendants may have going forward with regard to the Plaintiff's manner of pleading, the Court may re-visit the issue.

**72.** *See Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th DCA 2006).

**73.** *Id.*

that the "peculiar power of coercion" existed in support of the plaintiff's civil conspiracy claim based on the concerted nature of the defendants' actions. Given the small size of the condominium complex, the defendants' actions gave the impression to potential buyers that many of the units were for sale, thereby increasing supply, depressing market value, and raising concerns that something was wrong with the complex. The court surmised that a single defendant, acting alone, would not have achieved the significant effect on the plaintiff's property value that all the neighbors, acting together, were able to produce.

In the instant case, the Court does not find that any "peculiar power of coercion" exists to support an independent claim for civil conspiracy. While there may have been multiple participants in the various alleged kickback schemes, Plaintiff has not alleged that the defendants all acted together, in concert, to defraud the Debtor. There is no allegation of an overarching web of conspiracy between and among all the named defendants. Accordingly, the Court finds that Plaintiff's claim for civil conspiracy must be premised on an underlying tort. As pled, though, Plaintiff has not alleged or identified a specific underlying tort in connection with the conspiracy claim (i.e., civil conspiracy to commit a fraudulent transfer). Therefore, the Court dismisses count IV for conspiracy without prejudice to the Plaintiff to re-plead the claim consistent with this Order.

■ However, if Plaintiff does choose to assert a civil conspiracy claim to commit an underlying tort in any future individual adversary proceedings, the Court notes that Florida law does not recognize a cause of action against a non-transferee for conspiracy to commit a fraudulent transfer. In *Danzas Taiwan, Ltd. v. Freeman*,[74] the court held that a defendant who was not a recipient of an allegedly fraudulent conveyance was not subject to a claim of conspiracy to engage in fraudulent transfers. The court based its holding on the decision of its sister court in *Bankfirst v. UBS Paine Webber, Inc.*,[75] in which the court held that there is no cause of action under FUFTA against a party who allegedly "assists a debtor in a fraudulent conversion or transfer of property, where the person does not come into possession of the property."

■ After *Danzas Taiwan* and *Bankfirst* were announced, the Florida Supreme Court held in *Freeman v. First Union National Bank*[76] that Florida law does not countenance a cause of action against a non-transferee for aiding and abetting a fraudulent transfer. The court rejected the plaintiff's argument in that case that FUFTA created "new and independent causes of action such as aider-abettor liability."[77] Rather, the court found that the statute was limited to setting aside fraudulent transfers, and did not serve to create distinct causes of actions for damages against non-transferees. The court concluded that the statute "was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party … for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer."[78]

■ While the claim in *Freeman* was specifically for aiding and abetting a fraudulent transfer, the Court reads *Freeman*

---

74. 868 So.2d 537 (Fla. 3d DCA 2003).

75. 842 So.2d 155 (Fla. 5th DCA 2003).

76. 865 So.2d 1272, 1277 (Fla.2004).

77. *Id.* at 1276.

78. *Id.* at 1277.

to encompass other causes of action as well, including claims against non-transferees for conspiracy to commit a fraudulent transfer. Accordingly, if Plaintiff elects to maintain a claim for civil conspiracy in any future actions, the claim must be one to commit an underlying tort, which requires the pleading of both the underlying tort itself and the conspiracy. The underlying tort, of course, must be one recognized by Florida law. Finally, depending on whether the underlying tort is fraud-based, Plaintiff may have to satisfy the heightened pleading requirements of Rule 9(b).[79]

### *Conclusion*

Plaintiff has improperly joined all the named defendants in a single action and has also failed to satisfy the pleading requirements of the Federal Rules of Civil Procedure. Accordingly, it is

**ORDERED:**

1. The Motions to Dismiss (Doc. 133, 134) are GRANTED without prejudice.

2. Plaintiff shall have sixty (60) days to institute new, separate adversary proceedings against the named defendants and to file amended complaints that comply with this Order in any such adversary proceedings.

3. Any amended complaints that Plaintiff files in any newly commenced adversary proceedings as a result of this Order will relate back to the date of the amended complaint in this action and will be deemed for purposes of any statute of limitations issues as having been filed as of July 29, 2011.

4. This Order is without prejudice to each defendant of any newly commenced adversary proceeding to file whatever response to the complaint such defendant deems appropriate.

**DONE** and **ORDERED.**

---

79. *See American United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1067–68 (11th Cir.2007) ("where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity").